Cheryl Goodemote v. Philip Scripture, Superintendent Chittenden Community Correctional Center, and James A. Walton, Jr., Commissioner of Corrections

[440 A.2d 150]

No. 308-81

Present: Barney, C.J., Billings, Hill and Underwood, JJ., and Larrow, J. (Ret.), Specially Assigned

Opinion Filed December 11, 1981

Motion for Reargument Denied January 12, 1982

*James A. Dumont,* Franklin/Grand Isle County Public Defender, St. Albans, for Plaintiff.

*John J. Easton, Jr.,* Attorney General, Montpelier, *Alan B. Coulman* and *Elizabeth Grant Rome,* Assistant Attorneys General, and *Diana Agnew,* Special Assistant Attorney General, Waterbury, for Defendants.

**Hill, J.** This case concerns the transfer of a Vermont prisoner to the federal prison system. The plaintiff, Cheryl Goodemote, appeals from the Chittenden Superior Court's decision denying her request for an injunction prohibiting the State from transferring her to the federal system. We reverse.

## I.

In May of 1981, while serving a sentence for burglary, the appellant allegedly assaulted a corrections officer. She was arraigned on an aggravated assault charge on May 27, 1981, for that alleged attack. On that same day, the State held an administrative hearing preliminary to transferring the appellant to the federal prison system under 28 V.S.A. § 706. The appellant's counsel was barred from representing her by prison officials. Instead, the appellant was represented by a lay corrections officer. The appellant asked to call a psychologist as a witness. The hearing officer informed the appellant that the witness was unavailable, but he offered to relay any questions provided by the appellant to the witness. The record does not indicate whether the witness was ever contacted although the appellant's counsel maintains that the State illegally contacted the witness ex parte. The hearing officer forwarded a written decision to the Commissioner. That decision was not transmitted to appellant's counsel, and there is no copy of the decision in the record before this Court.

On May 28, 1981, the appellant requested and obtained a temporary restraining order blocking any anticipated transfer to federal prison. The appellant's request for injunctive relief was heard in the superior court on June 1, 1981. On June 8, 1981, the superior court vacated the temporary restraining order, and issued a judgment denying the request for injunctive relief. Subsequently, the Commissioner transferred the appellant to the federal prison system, and she is now incarcerated in a federal prison in Kentucky.

The State has made two attempts to involuntarily commit the appellant in the Vermont State Hospital, although the record does not indicate whether formal legal proceedings were instigated. Both parties agree that the appellant suffers some psychological disturbance, but the commitment attempts were unsuccessful.

On appeal, Ms. Goodemote raises numerous constitutional objections to the transfer. First, she argues that the Commissioner violated due process in failing to provide her with a written decision detailing the reasons for the transfer. Second, she argues that the Commissioner's failure at the administrative hearing to produce the witness requested by the appellant violated due process. Third, the appellant argues that the Commissioner's decision to bar the appellant's lawyer from the administrative hearing violated the right to counsel and due process. Fourth, she challenges the transfer on equal protection grounds, contesting the constitutional validity of providing less procedural safeguards for interstate involuntary commitments than intrastate involuntary commitments.

The appellant's sole nonconstitutional argument is that the Commissioner exceeded his statutory authority in using the federal prison transfer statute, 28 V.S.A. § 706, to transfer a prisoner for psychiatric care, as 28 V.S.A. § 703(a) requires such transfers to comply with the mental health care statutes, 18 V.S.A. §§ 7101–7802. The Commissioner claims that 28 V.S.A. § 706 is the governing statute, and that the transfer complied with the requirements of the statute and the Constitution.

■■ Dispositive issues of statutory law should be considered before deciding constitutional issues. *Wolston* v. *Reader's Digest Association, Inc.*, 443 U.S. 157, 160 n.2

(1979). See, e.g., *Herald Association, Inc.* v. *Ellison*, 138 Vt. 529, 533, 419 A.2d 323, 326 (1980). Thus, before we reach the constitutional issues presented in this appeal, it is necessary to decide which of the relevant statutes delineates the Commissioner's power. We hold that, under the facts of this case, the transfer should have conformed with the mental health statute, and, therefore, the Commissioner exceeded his powers. Thus, we need not decide the appellant's constitutional claims.

## II.

The federal prison transfer statute, 28 V.S.A. § 706, was enacted to respond to a critical inadequacy in Vermont's prison facilities. By the early 1970's, Vermont's only maximum security facility, the Windsor State Prison, had deteriorated to the point where the prison was inadequate to house the state's maximum security prisoners. Faced with the prohibitive costs of replacing the Windsor facility, the legislature chose federal placement as a more economical alternative for the placement of inmates who could not be securely detained in Vermont's existing facilities. See *Rebideau* v. *Stoneman*, 398 F. Supp. 805, 808 (D. Vt. 1975) (three judge court). Consequently, in 1972, the legislature enacted a comprehensive statute for the placement of inmates. 1972 Vt. Acts, No. 199, § 20 (1971 Adj. Sess.) (codified as amended at 28 V.S.A. §§ 1 to 1158).

Two sections of the 1972 package are relevant to this appeal. As amended in 1975, 28 V.S.A. § 706 authorized the Corrections Commissioner to "execute a contract . . . with the United States for the transfer of any inmate from any facility to a federal correctional facility." The procedures for transfer under this section differ from those concerning transfers for psychiatric care. Federal transfers are governed by broad criteria which allow transfer when the Commissioner concludes that:

> the inmate needs particular treatment or special facilities available at the federal correctional facility; or, all in-state treatment and rehabilitative programs available for the inmate have been considered and found unsuitable; or, all in-state security and custody alternatives for the in-

mate have been considered and found unsuitable; or, the inmate voluntarily requests transfer.

28 V.S.A. § 706(a).

Additionally, administrative hearing procedures were developed to afford inmates due process protections mandated by several federal court decisions concerning transfers from Vermont prisons to the federal system. See *Battick* v. *Stoneman*, 421 F. Supp. 213, 216–17 (D. Vt. 1976). These procedures provide for notice and a hearing before the transfer. At the hearing, the inmate is allowed representation by lay counsel. The inmate is also entitled to a written notice of the Commissioner's decision. See Policy No. 891, Titles 28–33, Vermont Regulations Annotated 77, 78–79 (Fox 1980).

■ In marked contrast to federal prison transfers, there is stringent judicial oversight for the transfers of prisoners to mental health care facilities. 28 V.S.A. § 703(a) provides:

If it becomes necessary to transfer a person who is under the supervision of the commissioner to the department of mental health the transfer shall be accomplished in accordance with the provisions of part 8 of Title 18.

Part 8 of Title 18 provides numerous substantive and procedural safeguards. An individual may be committed if she suffers from a mental illness that dangerously diminishes her capability to exercise self-control, judgment, or discretion, thereby endangering herself or others. See 18 V.S.A. §§ 7101(14), 7101(17), 7617. The State has the burden of proving its case by clear and convincing evidence. 18 V.S.A. § 7616(b); *Addington* v. *Texas*, 441 U.S. 418, 432–33 (1979). Appointed counsel is authorized for an individual subject to commitment. 18 V.S.A. § 7613(a). Furthermore, hospitalization may be ordered only after it has been determined that available alternatives to hospitalization are inappropriate. 18 V.S.A. § 7617(c).

■ The parties disagree over which set of procedures should govern the appellant's transfer. The appellant asserts that the purpose of the transfer was to obtain involuntary psychiatric care for Ms. Goodemote, which, under 28 V.S.A. § 703(a), triggered the procedural safeguards of Title 18. The

Commissioner maintains that the trial court's decision should be affirmed, because the purpose of the transfer is irrelevant, and the only restraints on his power to transfer to a federal facility are the criteria in 28 V.S.A. § 706. We disagree with the Commissioner.

## III.

Repeatedly, we have held that the specific statute controls the general statute in any conflict. See, e.g., *State* v. *O'Connell*, 135 Vt. 182, 184, 375 A.2d 982, 983 (1977); *Glabach* v. *Sardelli*, 132 Vt. 490, 496, 321 A.2d 1, 5 (1974). Recently, in a case similar to this appeal, we held that the State's statutorily conferred discretion in the placement of juveniles was superseded by a specific statute concerning out-of-state transfers. *In re J. S.*, 139 Vt. 6, 12, 420 A.2d 870, 873–74 (1980). In this case, the full enforcement of 28 V.S.A. § 703 can only be realized by following this principle of statutory construction. 28 V.S.A. § 703 specifically requires Title 18 procedures for one type of transfer, mental health care commitments. 28 V.S.A. § 706 addresses numerous types of federal transfers. If the Commissioner could evade the strictures of 28 V.S.A. § 703 simply by using transfer to a federal facility, as opposed to a state mental hospital, the protections of Title 18 would be of little consequence to inmates. Their fates would rest on the Commissioner's broad discretion, not upon a judicial decision. This result would frustrate the manifest purpose of 28 V.S.A. § 703, which is to assure that before inmates are committed, they will benefit from the same safeguards afforded all citizens. Therefore, we conclude that 28 V.S.A. § 703, not 28 V.S.A. § 706, is the controlling authority when the two sections conflict. An inmate may be involuntarily committed only in compliance with the procedures outlined in Title 18.

Given our construction of the statutes, the validity of the appellant's transfer turns on whether, as a factual matter, the transfer was equivalent to a commitment, and, therefore, subject to the safeguards of Title 18. The trial court made no findings on the purpose of the transfer, but did find that the appellant would be transferred to a federal facility with a psychiatric unit. Under direct examination, the Commissioner testified on the difference in treatment between the federal

prison and the Vermont State Hospital: "Well, I'm not prepared to, ahh, speak to the differences between the treatment that might be rendered to the client in that facility as opposed to the State Hospital. The difference being that in one case we can get her into the facility and the other we can not." Thus, it is clear that the purpose of the transfer was to obtain involuntary psychiatric care.

On these facts, we conclude that the prisoner's transfer was the functional equivalent of an involuntary commitment. Both the trial court's findings and the Commissioner's own testimony demonstrate that the sole purpose of the transfer was to obtain involuntary psychiatric care for the appellant. Furthermore, the decision to use a federal transfer was premised, in part at least, on the State's inability to compel involuntary care under Title 18. These facts require us to conclude that 28 V.S.A. § 703 subjected the transfer to the restraints imposed by Title 18. The Commissioner ignored these restraints, and thus violated a statutory limitation on his authority. See *In re J. S., supra,* 139 Vt. at 11, 420 A.2d at 873; *Miner* v. *Chater,* 137 Vt. 330, 333, 403 A.2d 274, 276 (1979). The denial of injunctive relief was therefore inappropriate.

*Reversed and remanded for an order requiring Cheryl Goodemote to be returned to the State of Vermont and to the custody of the Commissioner of Corrections. To be certified forthwith.*