ANNIE STEARNS et al. *v.* THE CITY OF BARRE.

May Term, 1900.  Re-argued January Term, 1901.

Present: TAFT, C. J., ROWELL, TYLER, MUNSON, START, WATSON and

STAFFORD, JJ.

Opinion filed August 14, 1901.

*Constitutional law—Right of eminent domain an attribute of sovereignty—The constitution may regulate its exercise*—Through the right of eminent domain in an attribute of sovereignty and exists independently of the constitution, the constitution may regulate the manner of its exercise.

*Constitutional law—Exercise of right of eminent domain under our constitution depends upon necessity—Question of necessity is made a judicial one*—Our constitution, in effect, declares that private property can be taken by the public only when it is necessary for its use, and this provision makes the question of necessity ultimately a judicial one.  The sovereign remains the judge of the question of necessity, but ultimately determines it through the judicial branch of the government instead of through the legislative branch.

*Constitutional law—Determination of necessity should precede or accompany a taking under the right of eminent domain*—A rule which permits the taking of property for public use without proof of the right to do so and casts upon the owner the burden of instituting proceedings to save his property does not meet the spirit of the constitutional requirement.  The existence of the necessity is the foundation of the right to take, and the ascertainment of the necessity should precede or accompany and not follow the taking. The constitution guarantees the protection of a right rather than the redress of a wrong.

*Constitutional law—Construction of Statutes—Statute leaving the extent of a taking under the right of eminent domain to the interested taker*—No. 165, Acts of 1894, sec. 55, sub-division 14, as amended by No. 145, Acts of 1896, sec. 3, undertakes to authorize the City of Barre to take property, by the exercise of the right of eminent domain, for the purpose of a water supply, and is unconstitutional in that it must be construed as leaving the extent of the taking to the final determination of the city itself acting through its officials.

PETITION of Annie Stearns and numerous others setting out that the defendant had condemned and appropriated the property of the petitioners for the purpose of a water supply, and that the petitioners were dissatisfied with such taking and with the compensation allowed them as damages. The petition prayed that disinterested commissioners be appointed to inquire into the convenience and necessity of the taking and condemnation, and to inquire also as to the damages sustained by the petitioners.

The defendant filed a motion to dismiss the petition so far as it related to the taking and condemnation. The court *pro forma* overruled the motion, Washington County, March Term, 1900, *Tyler,* J., presiding. The defendant excepted.

*R. M. Harvey* and *Frank J. Martin* for the petitioners.

*J. W. Gordon, S. H. Jackson, W. E. Barney* and *George W. Wing* for the defendant.

MUNSON, J.   The petition states that the petitioners are dissatisfied with the condemnation and appropriation of their property by the petitionee, and with the amount of compensation allowed; and prays for the appointment of commissioners to inquire as to the necessity, manner and right of such taking, and the damages caused thereby. The petitionee moves to dismiss so much of the petition as relates to the taking, on the ground that the determination of that matter by the city council is final. The petitioners insist that the provision authorizing the condemnation entitles them to the same appeal that is allowed from the decisions of selectmen in highway proceedings, and that unless the provision can be construed to authorize an appeal it must be held to be unconstitutional.

Sub-division 14 s. 55, No. 165, Acts of 1894, as amended by s. 3, No. 145, Acts of 1896, authorizes the city council to provide a supply of water for protection against fire and for

sanitary, domestic and other purposes, and provides that upon making compensation therefor it may take and condemn the lands, water, water privileges, rights and property of any person, company or corporation within the counties of Washington and Orange, except such as may have been acquired by other municipal corporations before the passage of the act, and contains the following provisions regarding procedure and appeal:

"In taking such lands, water, water privileges, rights and property, for such purposes, said city council shall proceed in the same manner as selectmen of towns are authorized by law to proceed in taking lands for highways; and the same right to appeal to the County Court from the decision of the city council in the awarding of damages for the taking of such lands, water, water privileges, rights and property shall be allowed; and such appeal shall be taken in the same manner as is provided by law for appeals from the decision of selectmen in matters of highways; except that such appeal shall not prevent the said city from proceeding with its works as though no such appeal had been taken."

The clause which provides for proceedings like those had in highway cases applies only to the taking. The clause granting an appeal restricts it to the decision awarding damages. The intention to do this is indicated by the further provision that the work shall proceed as though no appeal had been taken. So it becomes necessary to pass upon the petitioners' claim that the provision leaving the question of necessity to the determination of the officials of the municipality taking the property without allowing an appeal, renders the act unconstitutional.

The petitionee insists that it was clearly within the power of the legislature to leave this matter to the final determination of its city council. It is said that the action of the legis-

lature in exercising the right of eminent domain is conclusive upon the courts as regards the question of necessity; that instead of exercising this right directly, the legislature may grant authority to exercise it to any corporation or individual, and that the grantee of this authority may determine whether it shall be exercised and when and to what extent; that inasmuch as the property is taken for the public use and the owner assured of a just compensation, the interest the grantee may have in the taking is of no consequence; that the owner has no constitutional right to be heard upon the question of necessity, and that its reference to a judicial tribunal is a matter of favor and not of right. Various text-books on the law of eminent domain, and the decisions of many states, are cited in support of these propositions. It will be well, however, to make some examination of the cases before conceding the entire soundness of these views, at least in their application to the question as presented by this act.

The subject has not been extensively treated in our own cases, but in a matter of this nature and importance the slightest references should receive careful attention. In *Hatch* v. *Vermont Central R. R. Co.,* 25 Vt. 49 (61), the defendant's charter gave it the right to determine the location of its road, subject only to very general restrictions; and in discussing the questions directly in issue Judge Redfield remarked that, if the plaintiff desired to question the propriety of the location, it "should have been done by mandamus or injunction or some proper process to arrest and correct the evil, at the time of its being built." In *Hill* v. *Western Vermont R. R. Co.,* 32 Vt. 68, the charter of the company authorized it to take such lands as were necessary for the construction of its road and requisite accommodations, and the company surveyed certain land for depot grounds at Manchester. The referee found that a part of the land so surveyed was never necessary to the company

for railroad purposes, and would not become so prospectively. The court held that under its charter the company could not acquire any more land, nor any greater estate therein, for the purpose of a road-bed or stations than was really requisite for such uses; but that the directors could lay out their road and stations as they saw fit, and that as long as they acted in good faith, and not recklessly, their decision as to the quantity of land required for depot accommodations would be regarded as conclusive.    In the opinion Judge Redfield says that the right to exercise the power of eminent domain is made dependent upon rendering an equivalent in money, "and the implied compact not to acquire more land than they need;" and again, "unless they act rashly or in bad faith it is not very obvious how they are to be controlled in the matter.    No doubt if they act recklessly or extravagantly so as to indicate either utter incompetence, or corruption, or undue influence, or bad faith, a court of equity, at the suit of the land-owner or the stockholders, would set the matter right."    In *Eldridge* v. *Smith,* 34 Vt. 484, it was said that when land is taken for legitimate railroad use, the judgment of the locating officers is conclusive as to the quantity required for that purpose, unless the quantity taken is "clearly beyond any just necessity."    In *Williams* v. *School District,* 33 Vt. 271, Judge Poland says, that it rests wholly with the legislature to say whether sufficient necessity exists to justify the granting of the power, and that courts will not interfere with its discretion, "at least, not unless the entire absence of any necessity be shown."    In *Foster* v. *Stafford National Bank,* 57 Vt. 128, where the statute in question was held unconstitutional because of the failure to make adequate provision for compensation, the court treated the want of necessity and the failure to provide for compensation as of the same effect, saying that the constitution limits the right to take private property to cases where necessity requires it for

a public use and where just compensation is made, and that any legislative act authorizing such an appropriation when such a necessity does not exist, or which does not provide for compensation is plainly in conflict with the constitution.

The treatment of this subject by the courts of other states will sufficiently appear from a brief review of some of their cases. In *Ex Parte Manhattan Co.,* 22 Wendell 653, upon an application for the appointment of commissioners to value certain land taken by the company, it was alleged that the land was not needed for any purpose contemplated by the charter, but the court said the legislature seemed to have invested the company with a discretion nearly if not quite absolute; at any rate to have made them so far the judges of the matter that the court could not arrest them on the pending application; perhaps in no way except by a direct proceeding for an abuse of their powers. In *Cotton* v. *Boom Company,* 22 Minn. 372, the court found it unnecessary to decide whether the legislature could have authorized the defendant to determine the question of necessity conclusively, but held that it could authorize the defendant to make a determination of it that would be *prima facie* good and binding, and that it had done this, at least, by authorizing the defendant to designate the lands necessary to be taken. In *Matter of Albany Street,* 11 Wend. 149, which was a proceeding in connection with the opening of a street, it was objected that the extension through the churchyard was not a public necessity, and the court said that question was not before it—that if it had the power to review the decision of the corporation in that particular, it could not do so upon the pending motion. In *No. Missouri R. R. Co.* v. *Gott,* 25 Mo. 540, the charter gave the company a right to hold a strip of land the whole length of the road, not exceeding one hundred feet in width, and provided that in passing hills or valleys it might extend said width in order to effect

said object.    The petition alleged that the survey at the place
in question passed hills and valleys, and that a strip one hun-
dred and fifty feet in width was necessary for the construction
of the road.    The court held that this allegation was not trav-
ersable, saying that it was doubtless based upon the report of
the engineer, whose judgment therein controlled the plaintiff.
In *So. Carolina R. R. Co.* v. *Blake,* 9 Rich. L. 228, the company
was authorized to take at valuation whatever lands might
be required for the purposes specified, and its claim under this
provision is stated by the court as folows: "The company
says that it must judge, that no other person can know its
schemes and wants, that the land-owners' rights are made safe
by the provisions for compensation."    In commenting upon
this claim, the court says that if the mere assertion of the com-
pany that a parcel is required for some of the specified uses
were to be held conclusive, land might be taken for other uses,
and "no action of trespass would lie, for the taking would be
lawful; no prohibition to restrain either the company or the
commissioners would lie, for both would be acting within the
bounds of delegated power;" and no "injunction could rightly
arrest the regular exercise of lawful discretion."    The court
concluded that if the company's assertion of right was not
conclusive there must be some trial, that the complication of
the matter should not suffice to withdraw it from all investiga-
tion, and that the application of the company should set forth
the particular purpose for which the land was needed; but said
further that the mode of trial was not then under considera-
tion.    In *Baltimore & Ohio Railroad Company* v. *Pittsburg,
Wheeling & Kentucky Railroad Company,* 17 W. Va.
812, it is said that private property can be taken only
for a public use, and that no more of such property
can be taken than is necessary for such use, and that
this must be determined from the statute and the facts pre-

sented; that at whatever stage of the proceedings the land-owner is summoned to appear he has a right to resist the appropriation of his property, and that when it clearly appears that the property taken or a part thereof, is not necessary for the public use, as to so much the taking is unlawful.

It will be noticed that in most of the cases above cited the legislative act did not determine the amount to be taken. The language of the following cases will sufficiently indicate the ground upon which some courts accord the land-owner a judicial inquiry under statutes of this character. In *Clark* v. *Worcester,* 125 Mass. 226, the question was whether the fee or an easement was taken, and the court said, "the authority given to the city was to take and appropriate so much of the petitioner's estate as should be adjudged necessary to carry out the purposes of the act. The legislature did not undertake to define more particularly the nature of the estate required to be taken, or the quantity of the land to be used. The right to take is limited by the public exigency stated; beyond that the power to exercise the right of eminent domain is not given." In *Milwaukee & St. Paul R. R. Co.* v. *Fairbault,* 23 Minn. 167, it was claimed by the defendant that the city council was the sole and exclusive judge as to the public necessity and propriety of laying out the proposed street, on the ground that the existence of the necessity was a legislative and not a judicial question; and the court said: "This is undoubtedly a correct rule as applied to the legislature itself, and also to a municipal body when acting within the conceded limits of its delegated powers. But when, as in this case, the jurisdiction of the inferior tribunal over the particular subject matter depends, not upon an express grant of power, but upon the existence of an alleged necessity from which the disputed power is to be implied, the decision of such tribunal upon the existence of the necessity is neither final nor conclusive upon the courts."

The right to an inquiry as to the necessity is often denied when the general principles conceded in the discussion would seem to require a different conclusion.   In *Lynch* v. *Forbes,* 161 Mass. 302, it was said that neither the state nor its delegates could take property under the guise of eminent domain for a purpose clearly in excess of or at variance with the powers granted; but the court nevertheless held that the landowner could not stand upon the ground that the municipality had already acquired all the land necessary for its water works. The apparent inconsistency of these positions is pointed out by the writer of the note in 42 Am. St. Rep. 406.   This writer states and considers the following question: "Conceding the public use to have been properly declared, and the propriety of some exercise of the power of eminent domain in its behalf to be admitted, is the corporation or other body to which the legislature has delegated the right to exercise this power the sole judge of the extent of the property to be acquired, and may this body or corporation proceed to acquire property irrespective of the limits thereof; or may the person whose property is about to be taken answer that such property or some part thereof need not be taken, and that the purposes of the public use may fully be subserved without interfering with his property?"   The writer concludes that under statutes which merely confer authority to take for the public use the lands necessary therefor, the courts generally regard the allegation of a necessity for the taking as an issuable one, which it is not competent for the party seeking the condemnation to determine, and permit the person whose property is to be taken to litigate the question, and defeat the proposed appropriation so far as it appears to be unnecessary. Mr. Lewis, in his work on Eminent Domain, says that under general grants of power which expressly or by implication limit the right to so much property as

19

may be necessary for the proposed purpose, the necessity of taking particular property is a question for the courts. It is true that many of the cases cited in support of this proposition were under statutes which expressly committed the question to the courts, and are therefore not authority for the statement; but the proposition is not without the support of well considered cases, and is at least entitled to careful examination.

The cases already referred to suggest some inquiries that may be helpful in this further investigation. In the *Matter of Albany Street* the statute authorized the opening of streets by the city government, and provided that when a part of a lot was required for this purpose the commissioners of estimate might include the whole lot in their assessment, and that the whole should thereupon vest in the corporation. The court said this was an attempt to confer power upon the commissioners to take more land than was necessary and could not be sustained. But according to the doctrine claimed, if the statute had simply left it to the city officials to take as much land as was necessary, they could have taken the whole lot, and the land-owner could not have been heard to question their right. In *Eldridge* v. *Smith,* where land was acquired for station grounds at Northfield, it was held that land might properly be taken for use in piling wood and lumber, but not to afford room for a car factory or for dwellings to rent to employees. But if there can be no inquiry as to the purposes and necessities of the company, how can the land-owner ascertain the particular use for which the property is taken and restrict the taking to the legitimate need? It is said by Mr. Cooley that "the moment the appropriation goes beyond the necessity of the case, it ceases to be justified on the principles which underlie the right of eminent domain;" and again, "the right being based on necessity, cannot be broader than the necessity which supports it." But of what avail is this doctrine to the land-

owner if the taking is a conclusive determination of the existence and extent of the necessity?

In considering this question, the effect of incorporating the doctrine of eminent domain in the constitution must not be overlooked. It is doubtless true that the right of eminent domain is an attribute of sovereignty, and existed before the adoption of the constitution, and would continue to exist independently of it if not mentioned in it. But this does not take the provision, as embodied in the constitution, out of the ordinary rules pertaining to constitutional construction and enforcement. When so embodied its limitations become a matter of constitutional guaranty; and wherever there is a constitutional guaranty there is a call for the supervision of the courts. Our constitution in effect declares that private property can be taken by the public only when it is necessary for its use. Of what avail is this constitutional guaranty if there can be no judicial inquiry as to the necessity? The very existence of the provision makes the question of necessity ultimately a judicial one. If it does not, the legislature remains supreme in this regard notwithstanding the constitution. It is doubtless true that the people cannot divest themselves of this attribute of their sovereignty; but the constitutional provision is not an abandonment of the right, but a regulation of the manner of its exercise. It gives to the judicial branch of the government a measure of power that would otherwise belong to the legislative branch. It says in effect that the courts shall see to it that property is not taken unless a necessity for its taking exists. If a legislative determination of the question of necessity would be conclusive in the absence of the constitutional provision, that provision, if it is to have any effect whatever, must deprive the legislative determination of its conclusive character. The statement in *Foster* v. *Stafford National Bank,* above cited, that any legislative act authoriz-

ing an appropriation of private property where the necessity does not exist is plainly in conflict with the constitution, is apparently a recognition of this view, for how can the question of conflict with the constitution arise if there can be no inquiry as to the necessity?

It is evident from the cases before considered that many courts shrink from saying that the property owner can never be entitled to a hearing on the question of necessity, and yet find it difficult, upon the theories they have adopted, to say when and how such a hearing will be accorded him. It will aid us in dealing with this real or supposed difficulty to treat these enactments as divided into two classes. In one, the legislature authorizes the taking of certain specific property, or some property of a specified amount; in the other, it authorizes the taking of as much property as may be necessary for the purposes named. In the first, the legislature itself determines the amount of property to be taken; in the second, it leaves the amount to be determined by further proceedings. We apprehend that the difficulties suggested will be found to exist only in cases arising under statutes of the first class. Under statutes of the second class, the necessity is to be determined in some manner therein provided. If there is any infirmity here, it lies in the statute itself, and is apparent upon its face. It is only with the question as thus presented that we have to deal now.

The act under consideration authorizes the city to condemn property to provide a supply of water for the municipal purposes named. The meaning is of course that the city may take as much property as may be necessary for those purposes. The extent of the grant depends upon the extent of the necessity. If it takes more than is necessary, it is outside the power conferred. But if the theory contended for is correct it can never get beyond its grant, for the act of taking deter-

mines the necessity, and the necessity is the measure of the grant. Upon this reasoning we have a grant which can be indefinitely extended by the act of the grantee, and thus be made to legalize beyond the possibility of judicial inquiry, a taking which it is not within the power of the legislature to authorize. It would seem from these considerations that the mere act of taking under a general authority of this character cannot conclude the rights of the owner.

The petitionee concedes that the land-owner will be entitled to the aid of the courts if the taking is tainted by fraud. This of course is not a hearing upon the question of necessity, and is not claimed to be. The fact remains that under the proposed rule the owner may be deprived of land not needed for the public use, and be without remedy. To place the owner in this predicament it is only necessary for the corporation taking the property to be sufficiently moderate to escape the charge of bad faith. Between the limit called for by necessity and the limit determined in bad faith there lies a considerable territory as to which the law has had little to say. Within this range the land-owner is left without other protection than the discretion of the taker.

The theory seems to be that the legislature can take as much property as it judges to be necessary for the public use, and can therefore delegate to any applicant the right to take as much as he may consider necessary for that use. This involves not only an exercise of legislative discretion by delegated authority, but an exercise of it by a party who is to be benefited thereby. It is said, however, that the interest of the party who is to exercise the right is of no consequence, because the taking is for the public use and must be limited to the public necessity. But the taking is not limited to the public necessity by any other standard than the judgment of this interested taker. In this case the condemnation is by the

officials of the municipality for whose use the property is taken. It is said that whatever question can be made as to the propriety of delegating this power to private corporations or individuals, there is no basis for a doubt as to its propriety in the case of municipal corporations, these being but local branches of the government. But a municipality has the same interest to extend the taking beyond the necessity that a private corporation or individual would have. It is entitled to acquire enough to provide for the contingences of fire, and for the future wants of an increasing population; and in the meantime it can properly devote what is not required for existing public uses to uses that are not public. If it can secure under the guise of providing for these uncertain but legitimate necessities more than the law contemplates, it will swell the surplus available for the supply of private needs, and thus increase illegitimately the profits available for the payment of its general expenses. And this advantage can accrue to the municipality without any exercise of bad faith or tangible violation of law. Between the rights of the land-owner and this appropriation and use of his property there stands only the judgment of officials interested to provide for the municipal expenses otherwise than by taxation, and ready to believe that the most ample provision will be justified by the growth of their town.

There is, however, a growing disposition to assert that the rule which limits the taking to the necessity is something more than a theory; that the taking of the party making an appropriation under an indefinite grant is not conclusive upon the courts; and that if more be taken than is needed for the public use the aggrieved owner will be entitled to some proceeding to re-establish the bounds of his invaded right. But we think a remedy of this character comes short of the protection to which the owner is entitled. The constitu-

tion gives him something more than the right to recover his property from a summary seizure under an indefinite grant. His property is not to be taken unless necessary for the public use. The existence of that necessity is the foundation of the right to take, and its ascertainment should precede or accompany and not follow the taking.   We are not satisfied with a rule which permits the taking of land without proof of the right to do so, and casts upon the owner the burden of instituting proceedings to save his property.   This imposes upon the owner the necessity of furnishing bail for repeated suits in trespass or bonds for the payment of injunction damages, and these are burdens and risks which in some cases might easily deter a prudent man from any attempt to assert his claim.   Remedies of this nature do not meet the spirit of the requirement.   The constitution guarantees the protection of a right rather than the redress of a wrong.

We think an act which leaves the amount of the taking undetermined must provide for the determination a procedure which accords with the established principles of the law.   Mr. Lewis says in section 365 of the work already referred to, that the view entertained by some courts that the requirement of due process of law is not applicable to an exercise of the right of eminent domain, is wholly without foundation.   He says further that all authorities are agreed that due process of law requires notice and an opportunity to be heard before an impartial tribunal.   A reference to the views taken in regard to the failure to provide for notice will throw some light upon the question we are considering.   In many statutes of this character there is no provision for notice, and yet a statute has seldom been held invalid on this account.   The courts have generally conceded the necessity of notice, but have implied a requirement of notice from other provisions of the statute. The difficulties attending this course were pointed out by the Illinois

Court in *Johnson* v. *Joliet & Chicago R.R.Co.*, 23 Ill. 202; and Mr. Lewis concludes his consideration of the question and review of this case by saying that the only logical conclusion is that a statute which does not provide for notice is invalid. Some courts which entertain upon the question of necessity the views herein expressed have found a right of appeal under some general provision, or have in some way implied an intention to grant one. We can find no justification for the first course in any provision of our general law, and we are clearly precluded from the second by the fact that the right of appeal was at first expressly given and then taken away by amendment. In these circumstances the conclusions we have heretofore reached require that this part of the act be held invalid.

We have not arrived at this result without giving careful attention to the course of legislation in this state. It is said that the unquestioned acceptance for so long a period of our many enactments which provide for a taking by the interested party without an appeal being permitted, makes strongly in favor of the constitutionality of this method. We are reminded that prior to the revision of 1839 there was no appeal from the decision of the selectmen in laying out highways. It is equally true that during most or all of that time there was no provision regarding a finding of necessity or convenience. The early statute simply authorized the selectmen to lay out such highways as they judged proper. In view of the general frame of the law, no argument in favor of the constitutionality of this act can well be drawn from it. For the last sixty years the statute has allowed an appeal from these decisions of the selectmen, and we are not aware that the interests of the state have suffered from the change. Under some at least of our railroad charters there was no appeal from the action of the company in taking as much land as it chose for its road-bed and stations, and we have seen the manner in which our court has referred

to the problems presented by a taking under an indefinite grant of this character.   Most of the acts incorporating companies for supplying villages with water gave the right of eminent domain only for the transfer of the water, and in many cases where an appropriation of the water was authorized provision for an appeal was made.   The charter of the appellee as originally passed in 1894 contained a provision of this character, but this was stricken out by the amendment of 1896.

Nor have we overlooked the objections of a more general character.   It is said that great public improvements essential to the welfare of the state cannot be carried on, if the taking of private property is hampered by any judicial inquiry as to the necessity.   If this refers to the fact that a judicial tribunal will be less likely than the municipality to condemn all that is desired, the previous discussion must suggest a sufficient answer.   If it refers to matters of procedure, it is only necessary to say that provision can be made for the appointment, the hearing and the decision, irrespective of the stated terms of court.   It is said that the public necessity will not permit the delay incident to an appeal.   But there need be no appeal if the statute provides a suitable tribunal for the taking in the first instance.   No jury trial is required in such cases, and the several instances of taking can be finally disposed of by one disinterested commission.   This course in no way clashes with the doctrine that the sovereign must always be the judge of the necessity.   The sovereign remains the judge of the necessity, but ultimately determines it through the judicial branch of its government instead of the legislative branch.   It is the constitutional provision which represents the sovereign will—not the legislature nor the judiciary.   Nor will this prevent the making of a liberal provision for the legitimate needs of the municipality, both present and prospective.   But this liberal provision

will be made by a judicial tribunal under the rules of law as administered by established courts.

We hold this provision invalid, for that it leaves the extent of the taking to the final determination of the officers of the municipality making the condemnation.

*Appeal dismissed.*

*Start, J.,* dissents.