**In re Petition of the Town of Springfield to Condemn Certain Distribution and Transmission Facilities of Central Vermont Public Service Corporation in Springfield, Vermont**

[469 A.2d 375]

No. 82-348

Present: **Billings, C.J., Hill, Underwood and Peck, JJ., and Larrow, J. (Ret.), Specially Assigned**

Opinion Filed October 28, 1983

*Parker, Lamb & Ankuda, P.C.,* Springfield, *Richmond F. Allan* of *Duncan, Weinberg & Miller, P.C.,* and *Frederick D. Palmer,* Washington, D.C., for Plaintiff-Appellant.

*Donald L. Rushford,* Rutland, and *Paul, Frank & Collins, Inc.,* Burlington, for Defendant-Appellee.

**Billings, C.J.** This is an appeal from the decision of the Public Service Board [hereinafter "the board"], denying the Town of Springfield's petition to condemn, under 30 V.S.A. §§ 2909 and 2910, the electric distribution facilities of the Central Vermont Public Service Corporation [hereinafter "CV"] located within the town. Springfield brought its petition following a favorable town vote in accordance with the General Municipal Plant Enabling Act [hereinafter "the Enabling Act"], Chapter 79 of Title 30 [30 V.S.A. §§ 2901–2923], as part of its plan to establish a municipal electric utility.*

---

\* The voters of Springfield first elected to establish a municipal electric utility on March 4, 1975. This election was challenged by CV for procedural irregularities and the challenge sustained by this Court. *In re Central Vermont Public Service Corp.,* 135 Vt. 432, 378 A.2d 510 (1977). Thereafter, the voters of Springfield again elected to establish the municipal electric utility at a town meeting held on October 20, 1977. When CV declined Springfield's notice and request to negotiate the purchase of the facilities in Springfield, the town commenced this action to condemn the same on March 6, 1978. Hearings were held before the board during a two-year period, and on May 12, 1982, the board entered the decision and order here appealed.

While determining that Springfield fully complied with the provisions of the Enabling Act, the board nevertheless denied its petition, based on the board's interpretation and application of 30 V.S.A. § 249. The board held that § 249, giving the board jurisdiction to establish and alter utility service territories, derogated from the otherwise unrestricted right accorded municipalities by Chapter 79 to establish electric utilities, and subjected such undertakings to board veto, should it determine that the establishment is not "consistent with the general good of Vermont." 30 V.S.A. § 249(b). After extensive factual hearings, the board made just such determination, and denied Springfield's petition.

Springfield appeals, contending that: (1) 30 V.S.A. § 249 is inapplicable where a municipality, in full compliance with the provisions of 30 V.S.A. Chapter 79, elects to establish a municipal electric utility whose service area is co-terminous with its municipal boundaries; and (2) given that § 249 is without application, the board's denial of Springfield's petition should be reversed and its determination of just compensation due CV reinstated, without further hearings but with a revision as to the amount due. CV cross-appeals, claiming: (1) that the provision for condemnation in Chapter 79 is unconstitutional; (2) that even if it is not unconstitutional, the board nevertheless misapplied the test of necessity for condemnation in this case; and (3) that the board should have denied Springfield's petition for lack of any evidence on the town's proposed rate design. We will consider each of these arguments in turn.

The parties agree that the fundamental issue to be determined here is whether 30 V.S.A. § 249, relating to the board's overview of the establishment and alteration of utility service territories, is in conflict with, and derogates from, the right of a municipality to establish an electric utility pursuant to 30 V.S.A. Chapter 79. But for § 249, it is conceded that the board would be without authority to review the determination of the voters of Springfield to establish such a utility.

CV contended successfully below that § 249 did in fact derogate from the right accorded municipalities to establish electric utilities, and subjected such undertakings to veto by the board. These contentions rest on the proposition that the establishment of a municipal utility necessarily entails alteration of the service territory of the utility currently serving the mu-

nicipality, and that § 249, being a more recent enactment and one which specifically deals with the alteration of service territories, must be construed as having modified Chapter 79 and diminished the rights of municipalities by granting overview powers to the board. In order to pass on this argument, however, it is first necessary to review the statutory provisions in their entirety.

Chapter 79 of Title 30 was enacted in 1941, and was generally amended in 1947, 1961 and, most recently, in 1980. Its purpose, as construed by this Court, was to "fulfill a public need for electric service at economic rates, often in communities not served by private enterprise." *Hastings* v. *Village of Stowe, Electric Department*, 125 Vt. 227, 233, 214 A.2d 56, 61 (1965). Section 2902 of that chapter states in pertinent part as follows:

> In accordance with this chapter, a municipality may buy and sell electric current for domestic use and for commercial purposes and construct, purchase or lease, and maintain and operate one or more plants for the manufacture, distribution, purchase and sale of . . . electricity for the use of such municipality and for the use of the residents of such municipality and for such other customers outside such municipality as the board may approve unless otherwise provided for in this chapter.

Section 2904 prescribes the vote required before a town may acquire or construct a municipal plant, while § 2905 authorizes the municipality, once it has duly elected to establish a utility, to incur debt for that purpose.

Section 2906 requires the selectmen, following the town vote, to:

> notify in writing any utility engaged, at the time of the vote . . . , in generating or distributing . . . electricity for sale in such municipality, of such vote and request such utility whether it elects to sell and at what price, . . . that portion of its plant and property located within such municipality . . . and that portion, if any, lying without such municipality, which such municipality proposes to purchase.

The utility presently serving the municipality is required, under § 2907, to respond to the notice and inform the municipality whether it will sell the facilities requested and, if so, to set forth its price and terms. Section 2908 authorizes the selectmen to negotiate and agree with the utility upon the price to be paid, but provides that such agreement shall not be binding on the town until accepted by town vote.

Where the utility currently serving the municipality refuses to sell its facilities, § 2910 provides that the municipality, after appropriate vote, may:

> take such private plant and property by the exercise of the right of eminent domain, paying therefor just compensation determined in the manner provided in section 2909 of this title, or, after the board upon proper notice and hearing has determined that it will promote the general good of the state so to do, may construct a municipal plant.

As relevant here, § 2909 authorizes the board to determine the amount of just compensation and:

> when required to fix the price to be paid for such plant and property, [to] determine the amount of damages, if any, caused by the severance of the plant and property proposed to be purchased from other plant and property of the utility.

It is clear from these sections that Chapter 79 affords the board a very circumscribed role in the establishment process. Only when the municipality proposes to operate and serve customers beyond its municipal borders, 30 V.S.A. §§ 2902, 2906, 2912–2913, to construct a new municipal plant, 30 V.S.A. § 2910, or to discontinue service altogether, 30 V.S.A. § 2920, is it required to seek approval through a board determination of public good. Otherwise, the board is limited to those functions outlined in § 2909: determining just compensation for any eminent domain taking, the amount of attendant damages if any, the extent of property outside the municipality to be taken, and "any other matters in dispute" regarding the municipality's purchase of the existing utility. Significantly, neither the board nor any other body is granted the power to oversee the municipality's initial decision to establish its own utility.

Section 249 of Title 30 was enacted as part of Act No. 257, of the 1969 Adjourned Session. The stated purpose of that statute was set out in § 2 of the Act:

> It is hereby declared to be the policy of the state that the public interest requires that the public be protected from over-lapping conditions in the distribution of electrical energy by the establishment of service territories which will eliminate or prevent conditions leading to unnecessary duplication of service and economic waste in the distribution of electrical energy.

Section 3, codified as 30 V.S.A. § 249, reads in pertinent part as follows:

> The public service board shall have jurisdiction to establish service territories for companies subject to its supervision which are engaged in the distribution of electrical energy in the state and to alter those territories from time to time as conditions warrant.

Elsewhere in that chapter, the legislature determined those companies "subject to its jurisdiction" to include "municipalities . . . owning or conducting any public service business or property used in connection therewith." 30 V.S.A. § 201(a). Section 249 goes on to set out five criteria which the board must consider in making determinations regarding the establishment and alteration of service territories and, in § 249(b), requires the board to make findings that the service territories so established or altered "are consistent with the general good of Vermont."

■■ CV correctly cites those canons of statutory construction to be applied in cases where two statutes conflict irreconcilably: first, that a specific statute controls over the more general statute, *Goodemote v. Scripture,* 140 Vt. 525, 531, 440 A.2d 150, 153 (1981); *Lomberg v. Crowley,* 138 Vt. 420, 423, 415 A.2d 1324, 1326 (1980); and second, where two statutes deal with the same subject matter, the more recent enactment prevails as the latest expression of the legislative will. *Lomberg v. Crowley, supra; State v. Lynch,* 137 Vt. 607, 610, 409 A.2d 1001, 1003 (1979). However, for the reasons set forth below, we hold that the provisions of 30 V.S.A. Chapter 79 and

§ 249 are not in conflict, and thus that the canons cited above are inapplicable.

At the outset we note that there is nothing in the statutory language cited above to indicate that the legislature, in enacting § 249, intended to impair the unfettered right accorded municipalities under Chapter 79 to determine whether to establish municipal utilities. The Enabling Act specifically subjects a number of undertakings by a municipality in connection with the operation of an electric utility to supervision by the board, but it signally omits to subject the determination of the town voters to establish such a utility to any board overview whatsoever.

The purpose of § 249 was made explicit by its drafters: to "eliminate or prevent conditions leading to unnecessary duplication of service and economic waste" in utility distribution. Since a municipal utility established under Chapter 79 in most instances merely takes over, up to its municipal borders, the facilities, functions, and service territory of the existing private utility, there is absolutely no possibility of the overlap or duplication in energy distribution contemplated by § 249. In contrast, where a municipality creates the possibility of service duplication or economic waste, either by seeking to undertake new plant construction, 30 V.S.A. § 2910, or to provide services or otherwise function beyond its municipal borders, 30 V.S.A. §§ 2902, 2912–2913, the municipality is statutorily required to seek board approval beforehand.

■ Nor, as CV urges, will we look exclusively at the right of the board, secured by 30 V.S.A. § 249(a), "to alter" service territories, as an indication that the legislature intended to bring the provisions of Chapter 79 within the board's purview. As we have recently stated, we will not "excerpt a word or phrase [from a statute] and follow what purports to be a literal reading without considering the entire statutory scheme." *In re Judy Ann's Inc.,* 143 Vt. 228, 231, 464 A.2d 752, 754 (1983). Clearly, the power granted to the board under § 249 is very specific: the board has jurisdiction "to establish service territories for companies . . . *which are engaged in the distribution of electrical energy. . . .*" (Emphasis added.) As defined in that section, and in § 201(a), Springfield is not yet

such a company, nor will it be until its petition is granted and it commences to engage in the business of a utility.

For these reasons there appears to be no conflict between the two statutory sections at issue, and thus no reason to invoke those canons of statutory construction urged by CV. By Chapter 79, the legislature granted to municipalities the exclusive decision-making authority to determine whether to establish public utilities within their borders. Once established, however, a utility is clearly subject to the jurisdiction of the board, pursuant to 30 V.S.A. § 249, because it is then "engaged in the distribution of electrical energy." Once its jurisdiction attaches, the board is authorized to oversee all aspects of a municipal utility's operations. See, e.g., 30 V.S.A. §§ 2, 209, 218, 225–226 and 231. Until that time, the board is without jurisdiction. As we have said:

> [T]he public service board is a body exercising special powers, solely statutory in nature. Presumption plays no part in aid of its jurisdiction. "It has only such powers as are expressly conferred upon it by the Legislature, together with such incidental powers expressly granted or necessarily implied as are necessary to the full exercise of those granted . . . ."

*In re Dixon,* 123 Vt. 111, 113, 183 A.2d 522, 523 (1962) (quoting *Trybulski* v. *Bellows Falls Hydro-Electric Corp.,* 112 Vt. 1, 7, 20 A.2d 117, 120 (1941)).

We therefore hold that the board improperly interpreted and applied 30 V.S.A. § 249. The right and power to determine the establishment of a municipal electric utility are granted exclusively to the voters of that municipality, as long as the provisions of Chapter 79 are duly complied with, and the board is without jurisdiction either to review or deny such determination.

This holding requires us to reach those issues raised by CV's cross-appeal, the first of which challenges the constitutionality of the condemnation provision in Chapter 79. Specifically, CV argues that, under this Court's decision in *Stearns* v. *City of Barre,* 73 Vt. 281, 50 A. 1086 (1901), the necessity for an eminent domain taking must be determined by an impartial tribunal. As no such provision is made in 30 V.S.A. § 2910

with regard to the taking of the existing utility's plants and property, CV maintains that that statute is fatally defective. Moreover, CV urges, since the board is a body of specific and limited powers, neither the board nor this Court may enlarge its jurisdiction by delegating to it the implied power to make the necessity determination which, CV argues, is constitutionally required.

However, we are not persuaded that the *Stearns* case controls the statute here at issue. *Stearns* involved the petition of individual property owners in the city of Barre, filed in response to that city's condemnation of their properties for the purpose of establishing a public water supply. The state statute at issue, No. 165, Acts of 1894, § 55, subdivision 14, as amended by No. 145, Acts of 1896, § 3, authorized the Barre city council to provide a supply of water for protection against fire and for sanitary, domestic and other purposes. In the Court's words, the statute went on to provide that:

> upon making compensation therefor it may take and condemn the lands, water, water privileges, rights and property of any person, company or corporation within the counties of Washington and Orange . . . .

*Id.* at 283, 50 A. at 1087.

The statute allowed those whose property had been condemned to appeal to the superior court, but limited the scope of such appeal to the issue of damages. Thus, the city's initial determination of the necessity and scope of the taking was exclusive and unreviewable. Given such a wide and unreviewable grant of authority, this Court held that the act contravened the constitutional guarantee that private property will be taken by the public only when it is necessary for its use. The Court's reasoning is made clear in the following passage:

> The act under consideration authorizes the city to condemn property to provide a supply of water for the municipal purposes named. The meaning is of course that the city may take as much property as may be necessary for those purposes. The extent of the grant depends upon the extent of the necessity. If it takes more than is necessary, it is outside the power conferred. But if the theory contended for is correct it can never get beyond its grant, for

the act of taking determines the necessity, and the necessity is the measure of the grant. Upon this reasoning we have a grant which can be indefinitely extended by the act of the grantee, and thus be made to legalize beyond the possibility of judicial inquiry, a taking which it is not within the power of the legislature to authorize.

*Id.* at 292–93, 50 A. at 1090. Thus, the Court concluded, "We hold this provision invalid, for that it leaves the extent of the taking to the final determination of the officers of the municipality making the condemnation." *Id.* at 298, 50 A. at 1092.

The reasoning and rule of *Stearns* are wholly inapposite to the provisions of Chapter 79 here at issue, for 30 V.S.A. § 2910 does not "leave the extent of the taking" to the discretion of the condemnor. Rather, the town is authorized to take, upon failure to negotiate a voluntary sale, the entire plant and property owned by the private utility located within the town's borders, providing power for the municipality. That is, the statutory scheme delegates no discretion to the town to determine either the necessity or the extent of the taking of private utility property. The legislature has made that determination already. Thus, there is no possibility, as there clearly was in *Stearns*, that the scope of the taking could expand unreasonably to include more than was necessary for the municipal end in view.

In support of this point, we note that the legislature in fact has anticipated those further takings which a municipality might deem necessary for its utility functions, beyond that of the private utility plant and property within its boundaries, and has made provision therefor. 30 V.S.A. § 2914 provides as follows:

When it is necessary that a municipality which has voted to establish a municipal plant should acquire property within this state, or some easement or other limited right in such property in order that it may render adequate service to the public in the operation of its municipal plant, it may condemn such property or right in the manner prescribed for public service corporations in chapter 3 of this title.

Chapter 3 of Title 30 requires the board, upon petition of a utility and after full hearing, to determine the necessity for the taking, its scope, and just compensation therefor. See 30 V.S.A. §§ 110–117, 124. Thus, where the legislature has granted the municipality a broad authority to take, it has insured that the necessity determination be made by an impartial tribunal. In the instant case, however, the authority to take is specific and limited, the determination of necessity and of the extent of the taking has been made by the legislature, and Chapter 79 is therefore not unconstitutional. Moreover, it is clear from 30 V.S.A. § 2909 that the board's authority to act, in the event of disagreement as to property to be taken, applies only to "plant and property *lying without such municipality.*" (Emphasis added.)

This ruling makes consideration of CV's second argument unnecessary, and we turn to its final claim, which can be disposed of equally as quickly. CV maintains that the board erred in failing to deny Springfield's petition for lack of any evidence of rate design. However, this argument assumes, as CV asserts in its brief, that "30 V.S.A. § 249 et seq. is the law of the case," and that in order to make its determination of "general good" under that section, the board "at a minimum" must have before it evidence of Springfield's proposed rate design. Since we have already held § 249 to be inapplicable to a municipal decision under Chapter 79, this argument must fail. As noted above, once Springfield has established its municipal utility, it will be subject to the board's determinations regarding just and fair rates. See 30 V.S.A. §§ 218 and 225–226.

*The order of the Vermont Public Service Board denying the petition of the Town of Springfield is reversed; cause remanded for further proceedings consistent with the views expressed herein.*

**Billings, C.J.** On the handing down of the opinion defendant-appellee Central Vermont moved for leave to reargue, V.R.A.P. 40, bringing our attention to our order dated November 12, 1982, wherein the Public Service Board decision on damages was removed from this appeal. This Court requested the appellant Springfield to respond. The opinion was then recalled and

changes were made in that all parts of the opinion concerning damages were deleted.

The revision of the opinion does not change the result previously reached, and the entry order is not affected.

*Motion for reargument denied.* See *Mancini* v. *Mancini,* 143 Vt. 235, 240, 465 A.2d 272, 275 (1983) ; *State* v. *Lapham,* 135 Vt. 393, 408, 377 A.2d 249, 258 (1977).