## Vermont National Bank v. James P. Dowrick and Ingeborg Dowrick

[481 A.2d 396]

No. 82-525

Present: Hill and Underwood, JJ., Keyser and Larrow, JJ. (Ret.), and Costello, D.J. (Ret.), Specially Assigned

Opinion Filed June 15, 1984

*Plante, Richards, Terino & Hanley, P.C.,* White River Junction, for Plaintiff-Appellant.

*John J. Long, Jr.,* of *Johnson and Dunne,* Norwich, for Defendants-Appellees.

**Underwood, J.** The Vermont National Bank (Bank) brought two separate foreclosure actions against James P. and Ingeborg Dowrick (Dowricks) in Windsor Superior Court which were consolidated for trial and again on appeal. One of the issues raised in the Dowricks' counterclaim was an allegation of tortious interference by the Bank with a contractual rela-

tion of the Dowricks. The jury awarded the Dowricks $32,000 in damages on their counterclaim for tortious interference by the Bank with this contractual relationship, after all other issues had been resolved prior to trial.

The Bank's motions for directed verdict, for judgment notwithstanding the verdict, for remittitur and for a new trial, all of which related to the counterclaim, were each denied. On appeal, the Bank briefs only the trial court's denial of its motion for a directed verdict.

The facts involved in the appeal follow. In 1979 the Dowricks purchased a seventy-six acre tract of land in Quechee, Vermont, known as "Meadowland Farms." Mr. Dowrick intended to develop the land into home sites and to construct one "speculation home." Through a series of transactions, the Dowricks borrowed various sums and in 1979 executed two promissory notes to the Bank totaling $197,000. The loans were secured by first and second mortgages on parts of Meadowland Farms, and a second mortgage on the Dowricks' residence in South Woodstock, known as the Giles place. The Bank already held a first mortgage on this residence. By November of 1979 the Dowricks were in default on their obligations to the Bank.

In May of 1980, the Bank initiated two separate foreclosure actions against the Dowricks on the obligations outlined above. The Dowricks answered, filed affirmative defenses and advanced numerous counterclaims. Their counterclaim against the Bank for tortious interference with contractual relations is the basis for this appeal.

In November of 1980, Mr. Dowrick located a prospective purchaser for Meadowland Farms, and the two entered into a written purchase and sale agreement for the property. The Bank was not a party but did know of the agreement and had encouraged Mr. Dowrick to sell the property so that he could satisfy his obligations to the Bank. Mr. Dowrick and the purchaser subsequently executed an escrow agreement. The Bank signed the escrow agreement to indicate its consent to act as escrow agent for Mr. Dowrick and the purchaser and to hold, in an interest bearing account, earnest money deposits made by the purchaser under the terms of the agreement. The trial court ruled that the Bank was not a party to that agreement, and that ruling is not challenged on appeal.

A condition in the agreement between Mr. Dowrick and the purchaser required that the Bank provide the purchaser with interim construction financing at a specific rate, considerably lower than the prevailing rates at the time. Mr. Dowrick was to complete construction of a residence for the purchaser at an agreed price and to act as general contractor to develop further home sites for the purchaser after the sale. Eventually the Bank refused to provide the financing to the purchaser, who then declared the sales agreement void. The Bank had objected to the part of the purchase and sales agreement that would have made Mr. Dowrick the general contractor to complete the purchaser's residence after the sale. The Bank was skeptical of Mr. Dowrick's abilities to complete construction of the purchaser's residence at the promised price. Further negotiations between Mr. Dowrick and the purchaser, after the Bank refused financing, failed to produce an agreement. Subsequently, the Bank initiated the foreclosure actions.

## I.

At oral argument on the appeal, this Court on its own initiative raised the issue of the applicability of *Soucy* v. *Soucy Motors, Inc.*, 143 Vt. 615, 471 A.2d 224 (1983), because the Bank's petitions for foreclosure are equitable actions. The record disclosed that the assistant judges sat throughout the trial and signed the judgment order.

The case, however, never went to trial on the foreclosure actions, as they were resolved by the parties prior to trial. The only actions considered at trial were those raised by the Dowricks in their counterclaims. The Dowricks had also requested a permanent injunction to prevent the Bank from pursuing its foreclosure actions; but since the foreclosure actions were resolved prior to trial, neither the presiding judge nor the assistant judges ever considered the request for an injunction. Therefore, the foreclosure issue and the injunction issue, although raised in the pleadings, never went to trial and were never the subject of any trial court rulings.

The Dowricks, as one of their affirmative defenses to the Bank's foreclosure actions, pleaded estoppel, and coun-

·sel for the Bank argued that the Dowricks pursued equitable estoppel as an issue during trial and thus continued to invoke the court's equitable jurisdiction. We note, however, that estoppel is an affirmative defense, V.R.C.P. 8(c), and therefore relates only to the Bank's foreclosure actions which, as previously mentioned, were disposed of by the parties prior to trial. Estoppel is not a cause of action in and of itself cognizable as a counterclaim. Thus the defense of equitable estoppel was never an issue at trial.

■ The critical question before us is at what point in the suit jurisdiction is to be determined. The Bank argues that jurisdiction is determined from the pleadings; since the case began as a foreclosure action and since the Dowricks in their counterclaim requested an injunction, the Bank insists that equity was invoked. The Bank relies on *Soucy, supra,* for the proposition that "[o]nce invoked, equity retains jurisdiction over the entire action to see that complete relief is administered." *Id.* at 617, 471 A.2d at 225 (citing *LaMantia v. King,* 129 Vt. 628, 634–35, 285 A.2d 741, 745 (1971)). Counsel for the Dowricks argues that the equitable issues (foreclosure and request for an injunction) were resolved before trial commenced leaving only legal issues for determination. Thus, the presence of the assistant judges would not be jurisdictional error under *Soucy.*

■■ *LaMantia, supra,* would seem to support the Bank's proposition:

> The plaintiffs, *in their bill of complaint,* seek specific performance on the part of the defendants, . . . an accounting, . . . damages and other proper relief. *The jurisdiction of chancery was rightfully invoked and under such circumstances when equity has taken jurisdiction of a case it will retain it for all purposes and dispose of the whole matter.* An equity court, obtaining jurisdiction of a controversy on any ground or for any purpose, will retain jurisdiction for the purpose of administering complete relief.

129 Vt. at 634–35, 285 A.2d at 745 (emphasis added) (citations omitted). We are convinced, however, that this language

is too broad if applied to the instant facts. *LaMantia* indicates that some of the equitable relief requested in the complaint was actually heard and considered by the court. In the instant appeal, we have a somewhat unique situation in that *none* of the plaintiff's or defendants' requests for equitable relief were considered at trial. We now hold that, under circumstances such as these, the critical time for determining jurisdiction is at the time of trial, not when the pleadings are filed. Any indication in *LaMantia* or *Soucy* to the contrary is of no force. Therefore, because the equitable claims—foreclosure and the injunction—were resolved before trial and were never considered by the court during trial, only legal jurisdiction was invoked at trial, and the presence of the assistant judges was proper. Thus, we now address the Bank's appeal on its merits.

II.

The Bank argues that it was error for the trial court not to have granted its motion for directed verdict on the issue of tortious interference with a contractual relation as raised in defendants' counterclaim. We agree. Because we reverse on this issue, we need not address the Bank's claims of error relating to attorney's fees and damages.

The Dowricks seek to raise an issue that they were third-party beneficiaries under a contract between the Bank and the prospective purchaser. This issue was raised by them for the first time by way of a reply brief allowed under V.R.A.P. 28(c) and filed after oral argument. We have held that issues not raised in either the appellant's or appellees' briefs may not be raised in reply briefs filed under V.R.A.P. 28(c). *Condosta* v. *Condosta,* 139 Vt. 545, 547, 431 A.2d 494, 496 (1981). Thus, we will not address the third-party beneficiary issue on appeal, and now turn to the Bank's claim that the trial court erred in not granting its motion for a directed verdict.

When reviewing a trial court's denial of a directed verdict, we will view the evidence in the light most favorable to the nonmoving party and exclude any modifying evidence. *Currier* v. *Letourneau,* 135 Vt. 196, 199, 373 A.2d 521, 524

(1977). The facts disclose a situation where the Bank was anxious for the Dowricks to sell Meadowland Farms so that their obligations to the Bank, then in default, could be satisfied. There did not seem to be a hostile climate during the default; indeed there is evidence of a cooperative attitude between the Bank and the Dowricks. The Bank was aware of Mr. Dowrick's negotiations with the prospective purchaser and had even expressed interest in trying to offer the purchaser interim construction financing to help facilitate the sale of Meadowland Farms. Ultimately, however, the Bank became uneasy about Mr. Dowrick's role as prime contractor in the post-sale construction and about lending the purchaser money at below the prevailing rate of interest. Thus, when the Bank refused to lend money to the purchaser, the purchaser voided the sales agreement as provided. On these facts the Bank moved for directed verdict. The trial court denied the motion, and the jury returned a verdict against the Bank.

■ This Court has recognized the tort of interference with contractual relations. *Mitchell* v. *Aldrich*, 122 Vt. 19, 22–23, 163 A.2d 833, 835–36 (1960). Liability "is not restricted to definite and enforceable contracts. Protection is appropriate against unjustified interference with reasonable expectancies of profit though the contract is terminable at will or unenforceable . . . ." *Id.* at 23, 163 A.2d at 836; see also *Giroux* v. *Lussier*, 127 Vt. 520, 523–24, 253 A.2d 151, 154 (1969) (interference with real estate broker's contract).

*Mitchell* involved a situation in which the plaintiff had an agreement with the owner of a dairy herd to purchase the herd for $7,800, subject to the approval of a bank, which held a security interest in the herd. The bank's appraiser, with full knowledge of the prior arrangement for the sale, misrepresented to the seller that the bank would not approve the $7,800 figure. The bank's appraiser and another purchaser then offered the seller $8,100 for the herd; this was accepted. The bank's appraiser later received compensation from the purchaser for helping ready the cattle for auction. On these facts, this Court reversed the trial court, which had directed a verdict for the defendants (appraiser and the $8,100 purchaser).

In *Mitchell,* we noted that

> [t]here is substantial evidence to support the conclusion that *the defendants intruded upon [the contractual] relationship to intercept the prospective gain for themselves* by procuring a breach . . . . [T]he evidence permitted the jury to conclude that [the seller's] promise to the plaintiffs would have been fulfilled . . . had it not been for the participation of . . . the defendants.

*Id.* at 24, 163 A.2d at 836 (emphasis added). There can be little doubt that *Mitchell* presented just the kind of situation the law will step in to remedy: where the one interfering does so "to intercept the prospective gain." Accord *Giroux* v. *Lussier, supra,* 127 Vt. at 523, 253 A.2d at 154. The facts in *Mitchell* are, however, far from the instant facts.

The Bank did not *interfere* with the relations between Mr. Dowrick and the would-be purchaser. The Bank simply refused to become involved in the transaction upon exercise of its rightful business discretion. The facts indicate that the Bank would have been required to lend money to the prospective purchaser at below market rates and to remain involved, at least incidentally, with Mr. Dowrick, in whose abilities as a contractor it had lost confidence. Mr. Dowrick was to complete construction of a residence for the purchaser. Certainly it was not interference to decline to become involved with a particular transaction, especially one of questionable financial soundness. The Bank's decision was not "to intercept the prospective gain," but to avoid involvement in what it considered a potential loss.

The privilege of the Bank to decline to become involved in this transaction was well-stated in the Restatement of Torts § 762 (1939):

> One who causes intended or unintended harm to another merely by refusing to enter into a business relation with the other or to continue a business relation terminable at his will is not liable for that harm if the refusal is not
>
> (a) a breach of the actor's duty to the other arising from the nature of the actor's business or from a legislative enactment, or

>    (b) a means of accomplishing an illegal effect on competition, or
>
>    (c) part of a concerted refusal by a combination of persons of which he is a member.[1]

None of the three conditions above were met, and the Bank was free to refuse to lend money to the prospective purchaser. The rationale for this rule "rests upon fundamental assumptions in free business enterprise. Each business enterprise must be free to select its business relations in its own interest." *Id.,* comment a. The Restatement also recognizes that the rule covers a situation involving a lender and borrower. *Id.,* comment d. In *Farmers Cooperative Elevator, Inc.* v. *State Bank,* 236 N.W.2d 674 (Iowa 1975), the Supreme Court of Iowa held that a bank was not liable for tortious interference with a creditor's prospective business gain. With knowledge that the plaintiff elevator company was experiencing financial difficulty, the bank set off the plaintiff's checking account balance against several outstanding promissory notes thereby causing some of the plaintiff's checks to be returned for insufficient funds. *Id.* at 676. The court held that the plaintiff "did not introduce substantial evidence of a purpose on the part of the Bank to injure or destroy the [plaintiff]." *Id.* at 682. Similarly, we find no such intentional purpose on the part of the Bank in the instant case.

The Superior Court of New Jersey, Appellate Division, has held that a lender is not liable for interference to a third person, the borrower's corporation's president, for refusing to become involved by lending money. *Levin* v. *Kuhn Loeb & Co.,* 174 N.J. Super. 560, 417 A.2d 79, *certification denied,* 85 N.J. 144, 425 A.2d 296 (1980) (investment banker,

---

[1] This section was omitted from the Restatement (Second) of Torts (1979). This was not because of any change in the law, but because the American Law Institute felt that the principles stated in § 762 were more appropriately located in the field of trade regulation than in torts. Restatement (Second) of Torts division nine introductory note, at 2 (1979). We still find § 762 to be a viable statement of the law and join those courts which continue to cite it. See, e.g., *Fulton* v. *Hecht,* 580 F.2d 1243, 1250 (5th Cir. 1978), *cert. denied,* 440 U.S. 981 (1979); *Rothermel* v. *International Paper Co.,* 163 N.J. Super. 235, 246, 394 A.2d 860, 865 (1978).

which withdrew from underwriting plaintiff's corporation's securities, not liable to plaintiff who was later removed as corporation's president). We will not hold the Bank liable for interference when it merely refused to lend money while under no obligation to do so.

Even had the Bank's conduct risen to interference in the contractual relations of the Dowricks, the Bank may well have been able to establish a "justification for interference." *Mitchell, supra,* 122 Vt. at 24, 163 A.2d at 836. In order to protect its financial security, the Bank may have been able to prove entitlement to interfere. See *Pierce Ford Sales, Inc.* v. *Ford Motor Co.,* 299 F.2d 425, 429 (2d Cir. 1962). The *Pierce* court noted that "[t]he greater the obligations [the local dealer] assumed, the greater the likelihood of his having future financial difficulties. . . . *Ford would be justified in protecting its own interest to have a dealer financially sound."* *Id.* (emphasis added). The court held that Ford was privileged to withhold its approval of a prospective purchaser of the dealership, and that the then dealer had no action for interference with its agreement to sell the dealership.[2]

Because the Dowricks failed to show any tortious interference by the Bank with their attempt to sell the Meadowland Farms property, it was error for the trial court not to have directed a verdict for the Bank.

*Reversed. Judgment on the counterclaim for the plaintiff, with costs in each court.*

### On Motion To Reargue

**Underwood, J.** After the opinion was handed down, defendant-appellee James Dowrick moved for leave to reargue, under V.R.A.P. 40, bringing to our attention that certain provisions of a contract discussed in the opinion were unnecessary to our disposition. The opinion was recalled and the unnecessary parts were deleted.

---

[2] The *Pierce* court also noted a proximate cause problem in that case. 299 F.2d at 429–30. Since we find no interference in the instant case, we do not address the proximate cause issue. Cf. *Giroux* v. *Lussier, supra,* 127 Vt. at 524, 253 A.2d at 155 (damages in action for interference must be "a natural and proximate consequence of the interference.").

The revision of the opinion does not change the result previously reached, and the entry order is not affected.

*Motion for reargument denied. In re Town of Springfield, 143 Vt. 483, 494–95, 469 A.2d 375, 380–81 (1983).*

Hill, J., dissenting. I must dissent. The majority's holding that jurisdiction is determined at the time of trial rather than when the pleadings are filed is patently incorrect law. *LaMantia v. King,* 129 Vt. 628, 285 A.2d 741 (1971), which this Court improperly overrules today, states the longstanding and correct rule that the nature of a case is determined by the *pleadings,* so that a complaint or answer that raises an equitable issue "stamps the action as one in equity." 27 Am. Jur. 2d *Equity* § 7; see *Van Allen v. New York Elevated Railroad,* 144 N.Y. 174, 38 N.E. 997 (1894). Moreover, "equitable jurisdiction must be determined by the conditions existing *at the time the suit is filed,* and *not by conditions which come into existence after the commencement of the suit.*" 27 Am. Jur. 2d *Equity* § 8, at 526 (emphasis added) (citing *Busch v. Jones,* 184 U.S. 598, 599–600 (1902)). Finally, it is an established rule of law that once equitable jurisdiction attaches, it must retain jurisdiction and must dispose of the *entire* matter. *North Chicago Rolling Mill Co. v. St. Louis Ore & Steel Co.,* 152 U.S. 596, 612 (1894); J. Eaton, Handbook of Equity Jurisprudence § 10 (2d ed. 1923).

The pleadings in this case involved two actions for foreclosure, an affirmative defense of estoppel, and a counterclaim for a permanent injunction. All of these requests, as the majority admits, are equitable in nature. Therefore, equitable jurisdiction was invoked. Under this Court's holding in *Soucy v. Soucy Motors, Inc.,* 143 Vt. 615, 471 A.2d 224 (1983), only a presiding judge, and not the assistant judges, may hear equitable cases. *Id.* at 620, 471 A.2d at 226.\* "The presence of even one assistant judge [in a case involving an equitable matter is] reversible error, since the court, as constituted, had no jurisdiction to hear the case." *Id.* at 620,

---

\* Under legislation recently enacted by the legislature, 4 V.S.A. § 111(a) and § 219, assistant judges may participate in cases involving equitable issues. These statutes do not affect this case, however, since the appeal was pending prior to the passage of the legislation.

471 A.2d at 227. The assistant judges participated throughout this case; therefore, under *Soucy,* the case should be remanded for a new trial before a properly constituted court.

Since I would hold that, under *Soucy,* the lower court as constituted had no jurisdiction to hear this case, I would remand for a new trial before a properly constituted court. Therefore, I would not reach the issues reached by the majority in Part II.