737 P.2d 896

**Garrett R. QUINTANA and Richard P. Montoya, Plaintiffs-Appellants,**

v.

**FIRST INTERSTATE BANK OF ALBUQUERQUE, a National Bank, Defendant-Appellee.**

No. 8405.

Court of Appeals of New Mexico.

April 23, 1987.

Certiorari Denied June 1, 1987.

F. Joel Roth, Carl Bryant Rogers, Roth, Van Amberg, Gross, Amarant & Rogers, Santa Fe, for plaintiffs-appellants.

Russell Moore, Kurt Wihl, Keleher & McLeod, P.A., Albuquerque, for defendant-appellee.

## OPINION

BIVINS, Judge.

In this lawsuit, plaintiffs sought compensatory and punitive damages against defendant (the Bank) for alleged tortious interference with plaintiffs' contractual or prospective contractual relations. Plaintiffs appeal from an order dismissing their complaint for failure to state a claim upon which relief can be granted. We affirm.

Where the trial court grants a motion to dismiss for failure to state a claim, the allegations of the complaint must be taken as true for the purposes of appeal. *Bottijliso v. Hutchison Fruit Co.*, 96 N.M. 789, 635 P.2d 992 (Ct.App.1981). The complaint alleged that in April 1984, plaintiffs contracted to purchase from Guardian Property Guild, Inc. (Guardian), commercial rental property located on Menaul Boulevard in Albuquerque. This contract was conditioned on receiving consent from the Bank. As partial payment of the purchase price, plaintiffs agreed to assume two promissory notes held by the Bank that were secured by mortgages against the real property to be sold. One mortgage secured a promissory note with a balance of approximately $1,150,000 and the other secured a note with a balance of approximately $250,000. Both mortgages contained the following provision:

(i) ACCELERATION. The maturity of the principal indebtedness secured hereby may be accelerated in any of the following events.

. . . .

(7) If the Mortgagor or assignee sells or conveys (or contracts to sell or convey) all or any part of the mortgaged property without the written consent of the holder of said note.

Guardian sought the consent of the Bank, but the Bank refused, advising Guardian it would consider any sale to plaintiffs "in the absence of the Bank's written consent to constitute a default of the above referenced acceleration provision." The Bank also advised it would consider other prospective purchasers provided they were suitably qualified, and would waive prepayment penalties to facili-

tate retirement of the loans if Guardian insisted on selling to plaintiffs. Following receipt of a letter from plaintiffs' counsel demanding approval of the assumption of the mortgages and advising that failure to consent would result in a damage action, the Bank responded setting out what it termed the "legitimate business and credit concerns" that influenced its decision not to approve assumption by plaintiffs. These concerns included (1) plaintiffs' lack of the same financial strength and credit history as Guardian; (2) lack of confidence in plaintiffs' ability to perform, based on past experience; and (3) concern over a nonrecourse provision in the larger mortgage that relieved the maker from personal liability. Notwithstanding those concerns, the Bank indicated it would approve plaintiffs if the entire remaining obligation was rewritten into a new note and mortgage. The Bank offered to rewrite the loans at a higher interest rate, with Guardian to become personally liable along with plaintiffs. Plaintiffs declined and Guardian subsequently sold the property to another purchaser, whom the Bank accepted without any change in terms. This suit followed.

Although the parties raised a number of issues below, the trial court based its decision on the absolute discretion of a lender to withhold its consent under the terms of the two mortgages, declining to imply, as urged by plaintiffs, a requirement of "good faith, commercial reasonableness, fairness, justice and right dealing." In refusing to imply the requested language in the mortgages, the trial court relied on the provisions of the "due-on-sale" law, NMSA 1978, Sections 48–7–15 to –24 (Cum.Supp.1985) and *Brummund v. First National Bank of Clovis*, 99 N.M. 221, 656 P.2d 884 (1983).

New Mexico has already determined that due-on-sale clauses in a commercial mortgage are not a restraint on alienation of property. *Brummund v. First Nat'l Bank of Clovis; see also* § 48–7–17. The trial court cited *Brummund* for the proposition that a lending institution should be able to deal with transfers of collateral at its own best discretion. We read *Brummund* to state generally that due-on-sale

clauses are allowed; *Brummund* does not appear to address how much discretion lenders have in exercising options under such clauses. Further, *Brummund* dealt with the actual sale of secured property without the consent of the secured party. In our case, we are concerned only with the pre-sale implications of the Bank's refusal to consent to plaintiffs as new mortgagors, rather than with the post-sale implications of the due-on-sale clause. Plaintiffs urge us to impose a "good faith" requirement on the pre-sale consent required by the Bank. In this respect, *Brummund* provides no guidance because *Brummund* did not reach the issue of whether the acceleration of the balance due on the secured note was predicated on good faith.

■ We also find it unnecessary to reach that issue here. Because we hold that, apart from the due-on-sale clause, the Bank had the absolute right to decide with whom it wished to do business, any requirements of good faith and commercial reasonableness, which might be involved in the due-on-sale clause, are not pertinent considerations. Instead, our analysis examines the cause of action of tortious interference with contractual or prospective contractual relations.

■ On that basis, we now turn to the issue of whether the Bank's refusal to accept plaintiffs as mortgagors, or acceptance of them as mortgagors on different terms, constitutes tortious interference with plaintiffs' contractual or prospective contractual relations. We hold it does not and affirm the trial court on that basis. We uphold a decision of a trial court if it is correct for any reason and will not reverse when the correct result is reached. *H.T. Coker Constr. Co. v. Whitfield Transp., Inc.*, 85 N.M. 802, 518 P.2d 782 (Ct.App. 1974).

■ To state a claim for tortious interference with existing or prospective contractual relations, plaintiffs must establish that the Bank interfered with an improper motive or by improper means, *M & M Rental Tools, Inc. v. Milchem, Inc.*, 94 N.M. 449, 612 P.2d 241 (Ct.App.1980), or acted without justification or privilege, *Williams*

*v. Ashcraft*, 72 N.M. 120, 381 P.2d 55 (1963). The complaint alleges, at most, that the Bank refused to enter into any business relation with plaintiffs. There is no allegation that the Bank did more. It did not advise Guardian not to do business with plaintiffs; there is no indication it disparaged plaintiffs in any manner. In fact, in the same letter in which it denied consent, the Bank offered to waive any prepayment penalties if Guardian decided to go ahead with the sale to plaintiffs.

■ The mere refusal to deal with a party cannot support a claim for tortious interference with contractual relations. Restatement (Second) of Torts § 766 comment b (1979). As long as the Bank merely refused to enter into business relations with plaintiffs and left Guardian to make its own decision on what to do about the Bank's refusal, plaintiffs have no cause of action. Restatement, *supra*, comment *l*. As stated in Restatement of Torts § 762 (1939):

> One who causes intended or unintended harm to another merely by refusing to enter into a business relation with the other or to continue a business relation terminable at his will is not liable for that harm if the refusal is not
>
> (a) a breach of the actor's duty to the other arising from the nature of the actor's business or from a legislative enactment, or
>
> (b) a means of accomplishing an illegal effect on competition, or
>
> (c) part of a concerted refusal by a combination of persons of which he is a member.

This section was omitted from the Restatement, *supra*, Section 766, because the American Law Institute felt that the principles stated were more appropriately located in the field of trade regulation than in tort. Restatement, *supra*, Division 9, Introductory Note, at 2. It is still a viable statement of the law and continues to be cited by courts. *E.g., Vermont Nat'l Bank v. Dowrick*, 144 Vt. 504, 512, 481 A.2d 396, 400, n. 1 (1984), and cases cited therein.

In our case, none of the above three conditions can be met, and the Bank was free to reject plaintiffs as mortgagors. The Supreme Court of Vermont, in *Dowrick*, referring to Restatement, *supra*, Section 762, said: "The rationale for this rule 'rests upon fundamental assumptions in free business enterprise. Each business enterprise must be free to select its business relations in its own interest.' *Id.*, comment a. The Restatement also recognizes that the rule covers a situation involving a lender and borrower. *Id.*, comment d." *Id.*, 144 Vt. at 512, 481 A.2d at 400–401.

The Bank's privilege to refuse to do business with plaintiffs existed regardless of the motive for its decision. The fact that the Bank may have denied consent because of the earlier lawsuit is immaterial. *See Turner Constr. Co. v. Seaboard Sur. Co.*, 98 A.D.2d 88, 469 N.Y.S.2d 725 (1983); *see also Posa, Inc. v. Miller Brewing Co.*, 642 F.Supp. 1198 (E.D.N.Y.1986) (holding that refusal to maintain trade relations is an inherent right that every person may exercise lawfully for reasons he deems sufficient or for no reason whatever). Thus, the Bank was privileged to decide not to get involved in business with plaintiffs, and its desire to avoid such business cannot be considered an improper motive.

Plaintiffs seem to argue that the Bank breached its contractual obligations with Guardian and, therefore, used improper means to interfere with plaintiffs' conditional purchase and sale contract. We note that Guardian made no claim that the Bank breached the mortgage provisions or tortiously interfered with Guardian's contractual relations. *See Torgerson-Forstrom H.I. of Willmar, Inc. v. Olmsted Fed. Sav. & Loan Ass'n*, 339 N.W.2d 901 (Minn.1983). Even if it can be said that Guardian had certain contractual rights it could enforce against the Bank, and that the Bank breached its obligation, a breach of a contract with a third party is not the sort of improper means that has been held sufficient to support a claim of tortious interference with contractual relations. *See Kelly v. St. Vincent Hosp.*, 102 N.M. 201, 692 P.2d 1350 (Ct.App.1984) (as a matter of law, violations of corporate bylaws or procedural due process are not improper means sufficient to support a claim of tortious interference with contractual relations).

The right to choose freely one's business relations has been described as a fundamental right, *Posa, Inc. v. Miller Brewing Co.*, and as a fundamental assumption in free business enterprise. *Turner Constr. Co. v. Seaboard Sur. Co.; Vermont Nat'l Bank v. Dowrick.* There is no allegation that the Bank infringed on any established societal interest such as the maintenance of a free and competitive market or freedom from racial or sexual discrimination. *See Posa, Inc. v. Miller Brewing Co.* Plaintiffs had no independent right to demand that the Bank accept them as mortgagors. Since plaintiffs only allege the Bank exercised its fundamental right to choose with whom it will enter into business relations, the complaint fails to state a claim for tortious interference with an existing or prospective contract. *See Martin v. Texaco, Inc.*, 304 F.Supp. 498 (S.D.Miss.1969); *Wolf v. Perry*, 65 N.M. 457, 339 P.2d 679 (1959).

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

ALARID and APODACA, JJ., concur.