3 F.3d 1398
 26 Fed.R.Serv.3d 845
 Earl R.H. KNIGHT, Plaintiff-Appellant/Cross-Appellee,
v.
SNAP-ON TOOLS CORPORATION, Defendant-Appellee/Cross-Appellant,
and
Norm Moormeier, individually and as a supervisor of Snap-On
Tools Corp.; Rick Verrette, individually and as a
supervisor for Snap-On Tools Corp.;
Does 1 Thru 10, inclusive,
Defendants-Appellees.
 Nos. 91-2120, 91-2122, 92-2020 and 92-2031.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 31, 1993.
 
 Kent Winchester, Albuquerque, NM (Charles E.C. Harris, San Francisco, CA, with him on the brief), for plaintiff-appellant/cross-appellee.
 William C. Madison (M. Eliza Stewart and Gregory D. Steinman, with him on the brief), all of Madison, Harbour, Mroz & Puglisi, P.A., Albuquerque, NM, for defendant-appellees and cross-appellants.
 Before TACHA and BARRETT, Circuit Judges, and BROWN*, District Judge.
 TACHA, Circuit Judge.
 
 
 1
 Earl R.H. Knight was a tool dealer for Snap-On Tools Corporation ("Snap-On"). After their business relationship soured, Knight sued Snap-On for, among other things, tortious interference with prospective contractual relations and violation of the New Mexico Unfair Trade Practices Act ("UTPA"). The district court directed a verdict for Snap-On on the tortious interference claim; Knight received a jury verdict and a $23,116 award on the UTPA claim. The district court denied both parties' claims for attorneys' fees and costs. Knight appeals the directed verdict on the tortious interference claim and the denial of his petition for attorneys' fees and costs. Snap-On cross-appeals the denial of its petition for attorneys' fees and costs. We exercise jurisdiction under 28 U.S.C. Sec. 1291 and affirm in part, reverse in part, and remand for further proceedings.
 
 I. Background
 
 2
 Mr. Knight became a Snap-On dealer in 1977 and acquired a dealership territory in Albuquerque, New Mexico. At that time, a Snap-On dealer was an independent dealer who purchased tools from Snap-On and then resold them to individual mechanics. Each dealer was allowed to sell only within his territory, which consisted of a list of shops within a particular geographic area. In 1982, Snap-On persuaded Knight to give up about forty percent of his territory after convincing him that he would achieve better sales if he concentrated his efforts on a smaller number of clients. Their business relationship deteriorated from this point on.
 
 
 3
 Knight objected to Snap-On's allegedly high-pressure sales tactics, financial manipulation, and policy of pressuring dealers to solicit each client each week, regardless of that client's previous or expected sales volume. Knight also objected to Snap-On's practices with respect to promotional materials and credit. Dealers placed orders for new inventory each week. Snap-On, however, would not ship a tool order unless the dealer's previous invoices were paid in full. Knight identifies two problems with this arrangement. First, Snap-On frequently sold promotional materials, which were sent to the dealers whether they wanted them or not. Although the dealer could return the promotional materials for a full refund, the refund often took several weeks to process. Thus, the dealer had to pay for the unwanted promotional materials in order to receive his new inventory. Second, Snap-On required its dealers to extend credit to their customers, even though the dealers had to pay in full for the tools they purchased from Snap-On to keep as inventory. Knight alleges that, between the promotional shipments and Snap-On's credit requirements, he lacked sufficient cash flow to keep his truck stocked with tools.
 
 
 4
 Knight filed a lawsuit against Snap-On and other defendants in New Mexico state court on November 26, 1986. Snap-On removed the case to federal court on the basis of diversity jurisdiction. Knight's first amended complaint alleged the following causes of action: (1) fraud; (2) breach of duty of good faith and fair dealing; (3) tortious interference with contractual relations; (4) breach of contract; (5) violation of the UTPA; (6) negligent infliction of emotional distress; and (7) intentional infliction of emotional distress. He sought declaratory and injunctive relief as well as compensatory damages for loss of income and emotional distress and punitive damages.
 
 
 5
 In an April 13, 1990 order, the district court dismissed all of Knight's claims except the tortious interference and UTPA claims. In a Memorandum Opinion and Order dated June 6, 1990, the district court, through grants of partial summary judgment, limited Knight's tortious interference claim to a showing of "improper means" and limited Knight's UTPA claim to his allegations that Snap-On (1) enticed him into a relationship of their control, (2) forced him to buy goods he did not want, (3) forced him out of business to churn new dealers, and (4) disparaged him to his customers. On April 5, 1991, the district court granted Snap-On a directed verdict on the remaining tortious interference claim. On April 6, 1991, a jury found that Snap-On violated the UTPA and awarded Knight $23,116 in compensatory damages. The jury further found that Snap-On's conduct was not willful and declined to award punitive damages.
 
 
 6
 Knight then sought attorneys' fees and costs under the UTPA, which provides that "[t]he court shall award attorneys' fees and costs to the party complaining of an unfair or deceptive trade practice or unconscionable trade practice if he prevails." N.M.Stat.Ann. Sec. 57-12-10(C) (Michie 1987). Snap-On contested Knight's motion and sought its own attorneys' fees and costs under the Fed.R.Civ.P. 68 and the UTPA, which further provides that "[t]he court shall award attorneys' fees and costs to the party charged with an unfair or deceptive trade practice ... if it finds that the party complaining of such trade practice brought an action which was groundless." Id. In its Order entered January 9, 1992, the district court denied both petitions. It first reasoned that, although Knight was entitled to attorneys' fees and costs under the UTPA, Fed.R.Civ.P. 68 precluded any award of fees or costs because Knight had rejected an offer of judgment that was larger than the jury award he ultimately received. The court then concluded that Snap-On was not entitled to its attorneys' fees or costs under the UTPA because Knight's charge of an unfair trade practice, being the basis of a jury verdict in his favor, was not groundless.
 
 II. Tortious Interference
 
 7
 The district court directed a verdict for Snap-On after the close of Knight's evidence. We review the grant or denial of a motion for directed verdict de novo, applying the same standards used by the district court. Guilfoyle ex rel. Wild v. Missouri, Kan. & Tex.R.R. Co., 812 F.2d 1290, 1292 (10th Cir.1987). "A directed verdict is appropriate only if the evidence, viewed in the light most favorable to the nonmoving party, 'points but one way and is susceptible to no reasonable inferences supporting' the nonmoving party." Riggs v. Scrivner, Inc., 927 F.2d 1146, 1149 (10th Cir.) (quoting Zimmerman v. First Fed.Sav. & Loan Ass'n, 848 F.2d 1047, 1051 (10th Cir.1988)), cert. denied, --- U.S. ----, 112 S.Ct. 196, 116 L.Ed.2d 156 (1991). In this diversity case, we ascertain and apply New Mexico law such that we reach the same result that a New Mexico court would reach. See Adams-Arapahoe Sch. Dist. No. 28-J v. GAF Corp., 959 F.2d 868, 870 (10th Cir.1992). We review de novo the district court's rulings with respect to New Mexico law. See Salve Regina College v. Russell, 499 U.S. 225, 231-32, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).
 
 
 8
 New Mexico recognizes the tort of interference with prospective contractual relations and adopts the Restatement definition. See M & M Rental Tools, Inc. v. Milchem, Inc., 94 N.M. 449, 453, 612 P.2d 241, 245 (Ct.App.1980). The Restatement defines the tort as follows:
 
 
 9
 One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
 
 
 10
 (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
 
 
 11
 (b) preventing the other from acquiring or continuing the prospective relation.
 
 
 12
 Restatement (Second) of Torts Sec. 766B (1979). The New Mexico courts hold that the interference can be improper either in its motive or in its means. M & M Rental, 94 N.M. at 454, 612 P.2d at 246; see also Kelly v. St. Vincent Hosp., 102 N.M. 201, 207, 692 P.2d 1350, 1356 (Ct.App.1984).
 
 
 13
 Here, the district court granted partial summary judgment for Snap-On on Knight's allegations that Snap-On acted with an improper motive, but permitted Knight to present evidence pertinent to Snap-On's alleged interference through improper means. After Knight presented his evidence, however, the district court entered a directed verdict against Knight on this claim, stating that Knight failed to present sufficient proof of any means deemed "improper" under New Mexico case law.[1]
 
 
 14
 In M & M Rental, the court listed as examples of improper means "violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood." 94 N.M. at 454, 612 P.2d at 246. Although this list is not exhaustive, see id., New Mexico courts will find other means to be improper only where they are "innately wrongful or predatory in character." Kelly, 102 N.M. at 207, 692 P.2d at 1356; see also Ouintana v. First Interstate Bank, 105 N.M. 784, 787, 737 P.2d 896, 899 (Ct.App.) ("breach of a contract with a third party is not the sort of improper means that has been held sufficient to support a claim of tortious interference with contractual relations"), cert. denied, 105 N.M. 781, 737 P.2d 893 (1987). Knight contends that Snap-On used improper means by shrinking his dealership territory and misrepresenting the degree of independence he would enjoy as a dealer. We find no evidence of improper interference on this record.
 
 
 15
 First, we discern no "improper means" associated with the reduction of Knight's dealership territory. Knight agreed to the reduction as part of his 1982 dealership contract. The contract itself clearly was a proper means of altering the business relationship between the parties, and Knight identifies no evidence in the record that Snap-On coerced or tricked him into entering the agreement. Thus, although Knight unquestionably lost customers as a result of the reduction of his territory, the record, viewed in the light most favorable to Knight, indicates that Knight, and not Snap-On, caused that loss. In effect, Knight interfered with his own business relations in an attempt to concentrate his sales efforts on a smaller number of mechanics.
 
 
 16
 Knight's remaining arguments center around Snap-On's promotional material and credit policies, which were alleged to be at odds with Snap-On's initial representations about the independence of its dealers. Knight argues that "[i]t is disingenuous at best to tell dealers and prospective dealers that they will be independent businessman [sic] and then deprive them of the ability to control their own cash flow or their own inventory." Knight does not contend that Snap-On's policies themselves constituted improper means, but that Snap-On's alleged misrepresentations with respect to the company-dealer relationship constituted improper means. He does not tell us, however, how either those alleged misrepresentations or the fact of enticement cost him any business. Rather, Knight depicts his injuries as cash-flow problems stemming from particular Snap-On practices. To sustain his claim, Knight "must prove that there was an actual prospective contractual relation which, but for [Snap-On's alleged misrepresentations], would have been consummated." Anderson v. Dairyland Ins. Co., 97 N.M. 155, 637 P.2d 837, 841 (1981). Because Knight does not contend that Snap-On's alleged improper conduct--the misrepresentations--ever actually interfered with his prospective contractual relations, he has failed to plead an essential element of his cause of action.[2] We therefore affirm the directed verdict for Snap-On.III. Attorneys' Fees and Costs
 
 
 17
 Knight originally proposed to settle the dispute for $320,000. On October 15, 1990, after the district court had ruled against Knight on all but part of two of his claims, Snap-On filed with the district court an Offer of Judgment in the amount of $50,000 pursuant to Fed.R.Civ.P. 68.[3] Knight rejected this offer, and subsequent settlement negotiations proved fruitless. Knight ultimately recovered $23,116 on his claim under the UTPA. He then sought an award of attorneys' fees and costs under the UTPA's fee-shifting provision.
 
 
 18
 The district court denied Knight's petition for attorneys' fees and costs, finding them barred by Fed.R.Civ.P. 68 because Snap-On's offer of judgment exceeded Knight's damage award. Citing Marek v. Chesny, 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985), the district court first concluded that Rule 68 required it to compare the defendant's offer with the sum of the plaintiff's damage award plus his reasonable pre-offer attorneys' fees. The district court, however, did not actually calculate the amount of pre-offer fees to which Knight would have been entitled under the UTPA. Rather, the court stated that it was not necessary to calculate a precise fee award because no reasonable award of pre-offer fees would have been large enough to equal or exceed, when added to the $23,116 damage award, the $50,000 Rule 68 offer. In other words, having found that Knight's reasonable pre-offer fees were less than $26,884, the court concluded that Snap-On's $50,000 Rule 68 offer necessarily exceeded the sum of Knight's damage award and reasonable pre-offer attorneys' fees. Thus, the court held that Rule 68 precluded any award of costs, including all of Knight's attorneys' fees, pre- and post-offer. The court also denied Snap-On's request for attorneys' fees and costs under the UTPA. We first address the availability of fees and costs under the UTPA, and then consider the effect, if any, of Rule 68 on the statutorily shifted fees and costs.
 
 A. Attorneys' Fees and Costs Under the UTPA
 
 19
 "We review the district court's award of attorneys' fees for an abuse of discretion. Underlying factual findings will only be upset when clearly erroneous. However, a district court's statutory interpretation or legal analysis which provides the basis for the fee award is reviewable de novo." Homeward Bound, Inc. v. Hissom Memorial Ctr., 963 F.2d 1352, 1355 (10th Cir.1992) (citations omitted). We ascertain and apply the UTPA's fee-shifting provision such that we reach the same result that a New Mexico court would reach. See Adams-Arapahoe, 959 F.2d at 868.
 
 The UTPA provides:
 
 20
 The court shall award attorneys' fees and costs to the party complaining of an unfair or deceptive trade practice or unconscionable trade practice if he prevails. The court shall award attorneys' fees and costs to the party charged with an unfair or deceptive trade practice or an unconscionable trade practice if it finds that the party complaining of such trade practice brought an action which was groundless.
 
 
 21
 N.M.Stat.Ann. Sec. 57-12-10(C) (Michie 1987). Knight won a jury verdict under the UTPA. Snap-On contends, however, that Knight was not a "prevailing party" because he did not succeed on all of his claims brought under the UTPA. We disagree.
 
 
 22
 New Mexico courts define the prevailing plaintiff as the party who wins the lawsuit. See American Ins. Co. v. El Paso Pipe & Supply Co., 978 F.2d 1185, 1192 (10th Cir.1992). And, as Snap-On concedes in its brief, one need not prevail on the entire claim to merit prevailing party status. See Rhinehart v. Nowlin, 111 N.M. 319, 328, 805 P.2d 88, 97 (Ct.App.1990). We conclude that, under New Mexico law, Knight is entitled to attorneys' fees and costs because he was a prevailing party.[4]
 
 
 23
 We also reject Snap-On's claim for attorneys' fees on the basis that certain parts of Knight's UTPA action were groundless. A claim is groundless under the UTPA if it is frivolous under the facts or law extant at the time it is brought. See G.E.W. Mechanical Contractors, Inc. v. Johnston Co., 115 N.M. 727, 732-733, 858 P.2d 103, 108-109 (N.M.Ct.App.1993). As a whole, Knight's claim was not frivolous; he won. We reject Snap-On's attempt to fractionalize the prevailing plaintiff inquiry. We find no evidence that the New Mexico legislature intended to create a mechanism for UTPA violators to tax a plaintiff's unsuccessful trade practices allegations against his successful ones. Snap-On can claim no attorneys' fees or costs under the UTPA.
 
 B. Rule 68
 
 24
 Having concluded that Knight alone is entitled to attorneys' fees and costs under the UTPA, we now turn to the effect of Snap-On's Rule 68 offer of judgment. Snap-On contends that Rule 68 both precludes the award of Knight's fees and costs and mandates that Knight pay Snap-On's fees and costs. Before addressing the precise effect of Snap-On's offer of judgment in this case, however, we must first clarify the scope of Rule 68. The proper interpretation of Rule 68 is a legal question which we review de novo. See Erdman v. Cochise County, 926 F.2d 877, 879 (9th Cir.1991).
 
 Rule 68 provides, in pertinent part:
 
 25
 At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued.... If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.
 
 
 26
 Fed.R.Civ.P. 68. Under this scheme, the defendant can protect itself from the costs associated with protracted litigation by making a formal offer of judgment. If the final judgment is less than the settlement offer, the otherwise "prevailing" plaintiff is precluded from recovering his post-offer costs. See, e.g., O'Brien v. City of Greers Ferry, 873 F.2d 1115, 1118 (8th Cir.1989).
 
 
 27
 "Costs" typically are defined by reference to 28 U.S.C. Sec. 1920 and include things such as filing fees and court reporter fees.[5] In Marek, however, the Supreme Court stated that "costs" also are defined by the underlying substantive law. 473 U.S. at 9, 105 S.Ct. at 3016-17. Thus, the Court held that attorneys' fees in a civil rights action under 42 U.S.C. Sec. 1983 are "costs" because the fee statute, 42 U.S.C. Sec. 1988, provides that a prevailing party in a Sec. 1983 action may be awarded attorneys' fees "as part of the costs." Id. From Marek, then, we derive the general rule that "the costs which are subject to the cost-shifting provisions of Rule 68 are those enumerated in 28 U.S.C. Sec. 1920, unless the substantive law applicable to the particular cause of action expands the general Sec. 1920 definition." Parkes v. Hall, 906 F.2d 658, 660 (11th Cir.1990). "In a diversity action, the court looks to the substantive law which creates the cause of action ... to determine if costs include attorneys' fees." Tanker Management, Inc. v. Brunson, 918 F.2d 1524, 1527 (11th Cir.1990); see also Zackaroff v. Koch Transfer Co., 862 F.2d 1263, 1265 (6th Cir.1988).
 
 
 28
 Based on the plain language, we conclude that the UTPA does not define "costs" to include "attorneys' fees."[6] The UTPA provides that "[t]he court shall award attorneys' fees and costs to the party complaining of an unfair or deceptive trade practice or unconscionable trade practice if he prevails." N.M.Stat.Ann. Sec. 57-12-10(C) (emphasis added). Thus, unlike the statute at issue in Marek, the UTPA simply does not make attorneys' fees an element of costs. Rather, the fee-shifting provision clearly identifies attorneys' fees separately from costs. Cf. Oates v. Oates, 866 F.2d 203, 206-07 (6th Cir.1989) (fee-shifting provision of federal wiretapping statute, 18 U.S.C. Sec. 2520, which provides for the award of "a reasonable attorneys' fee and other litigation costs reasonably incurred," does not define attorneys' fees as costs for purposes of Rule 68) (emphasis added). We believe this interpretation is both the most natural reading of the statute and consistent with New Mexico courts' decisions under the UTPA. See, e.g., Hale v. Basin Motor Co., 110 N.M. 314, 321, 795 P.2d 1006, 1013 (1990) (discussing separately "attorneys' fees" and "costs" awarded under the UTPA). Thus, our calculation of costs under Rule 68 does not include amounts awardable as attorneys' fees under the UTPA.[7]
 
 
 29
 Having concluded that the Rule 68 "costs" in this case do not include attorneys' fees, we turn to the Rule 68 comparison of the offer and the award. In making its comparison, the district court compared Snap-On's $50,000 offer, which included Knight's pre-offer costs,[8] with the sum of the jury award and Knight's pre-offer costs. Although the Supreme Court appears to endorse this method of comparison, see Marek, 473 U.S. at 7, 105 S.Ct. at 3015, the practice is not without controversy, see Marryshow v. Flynn, 986 F.2d 689, 694 (4th Cir.1993) (Luttig, J., dissenting) (reasoning that Rule 68 requires the court to compare the offer, including pre-offer costs, to the award, excluding all costs or other considerations). We need not resolve the debate here, however, because Knight sought only $3,868.25 in costs for the entire trial. Even if all of those costs accrued pre-offer, the sum of those costs and the jury award would be only $26,984.25. Therefore, Snap-On's $50,000 offer was necessarily greater than the judgment finally obtained by Knight.[9] In Crossman v. Marcoccio, 806 F.2d 329 (1st Cir.1986), cert. denied, 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987), the First Circuit concluded that Rule 68 shifts both the plaintiff's and the defendant's post-offer costs to the plaintiff. Id. at 333. We agree with this straightforward interpretation of the rule and conclude that Knight may not recover his post-offer costs and must pay Snap-On's post-offer costs.
 
 
 30
 We AFFIRM the directed verdict on Knight's claim for tortious interference with prospective contractual relations and the denial of Snap-On's petition for attorneys' fees under the Unfair Trade Practices Act. We REVERSE the district court's denial of Knight's petition for attorneys' fees and its denial of Snap-On's petition for its post-offer costs. In accordance with the above analysis, Knight is entitled to attorneys' fees and his pre-offer costs under the UTPA; Rule 68, however, bars the award of his post-offer costs and entitles Snap-On to its post-offer costs. Snap-On is not entitled to any attorneys' fees. We REMAND for a calculation of Knight's attorneys' fees and pre-offer costs, for a calculation of Snap-On's postoffer costs, and for other proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [1]
 The district court noted that it had denied Snap-On's earlier summary judgment on the improper means only because Knight averred in a sworn statement that Snap-On had defamed him to his customers. At the directed verdict hearing, Knight conceded that he had presented no evidence in support of that assertion
 
 
 [2]
 Even had Knight specifically identified those practices as constituting improper means, they were neither inherently improper nor the type of conduct sufficient to support a claim of tortious interference. See Kelly, 102 N.M. at 207, 692 P.2d at 1356; Quintana, 105 N.M. at 787, 737 P.2d at 899
 
 
 [3]
 The offer of judgment provides:
 Snap-On offers to allow a judgment to be entered against it in the total amount of $50,000.00, including costs to date, with the parties to bear their own attorneys' fees.
 
 
 [4]
 Snap-On also contends that Knight cannot be a prevailing party because the jury award was less than the Rule 68 settlement offer. Even assuming such a comparison were relevant to the prevailing party issue under the UTPA, the amount of the offer of judgment to settle all of Knight's claims has little bearing on whether he prevailed on his UTPA claims
 
 
 [5]
 The statute provides:
 A judge or clerk of any court of the United States may tax as costs the following:
 (1) Fees of the clerk and marshal;
 (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
 (3) Fees and disbursements for printing and witnesses;
 (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
 (5) Docket fees under section 1923 of this title;
 (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.
 A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.
 28 U.S.C. Sec. 1920.
 
 
 [6]
 We have found no case law discussing whether these statutory attorneys' fees are part of the costs for purposes of either Fed.R.Civ.P. 68 or its state analogue, N.M.Dist.Ct.R.Civ.P. 1-068
 
 
 [7]
 We also note that, even if the UTPA defined attorneys' fees as an element of costs, the district court erred in denying Knight his pre-offer attorneys' fees because Rule 68 affects only post-offer costs
 
 
 [8]
 Rule 68 expressly requires that the offer include, either as a part of or in addition to the sum stated, reasonable costs then accrued. See Marek, 473 U.S. at 6, 105 S.Ct. at 3015
 
 
 [9]
 Knight sought, but did not receive, injunctive and declaratory relief