96 F.3d 1453
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Eric JACKSON, Plaintiff-Appellant,
v.
FREIGHTLINER CORPORATION, Defendant-Appellee.
 No. 94-2163.
(D.C.No. CIV-93-968-JB/DJS)
 United States Court of Appeals, Tenth Circuit.
 Sept. 5, 1996.
 
 1
 Martin K. Holland (Joseph L. Werntz with him on the briefs) of Moses, Dunn, Farmer & Tuthill, P.C., Albuquerque, N.M., for Plaintiff-Appellant.
 
 
 2
 John R. Cooney (Charles A. Armgardt with him on the brief) of Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, New Mexico, for Defendant-Appellee.
 
 
 3
 ORDER AND JUDGMENT*
 
 
 4
 Before BRORBY and McKAY, Circuit Judges, and OWEN,** District Judge.
 
 
 5
 Plaintiff Eric Jackson appeals the district court's order dismissing his complaint with prejudice pursuant to Fed.R.Civ.P. 12(b)(6). We affirm.
 
 
 6
 * The following summary of the relevant facts is drawn from Mr. Jackson's complaint. Because Mr. Jackson challenges the dismissal of his case pursuant to Fed.R.Civ.P. 12(b)(6), we view the facts alleged in the complaint as true for the purposes of this appeal. Albuquerque Freightliner, Inc. ("Freightliner Albuquerque") is an independent authorized dealer for Freightliner Corp. in New Mexico. Pursuant to certain agreements between Freightliner Albuquerque and Freightliner Corp., Freightliner Albuquerque could not sell or assign an interest in the dealership or its assets to a third party without Freightliner Corp.'s prior written consent. On January 9, 1993, Mr. Jackson and Freightliner Albuquerque executed an Asset Purchase Agreement whereby Mr. Jackson agreed to purchase the dealership and certain related assets from Freightliner Albuquerque. The sale was to be completed as soon as possible, but no later than February 12, 1993.
 
 
 7
 Freightliner Albuquerque sent Freightliner Corp. a copy of the Asset Purchase Agreement on January 11, 1993, and provided Freightliner Corp. written notice of its intent to sell the dealership and related assets to Mr. Jackson. On January 20, 1993, pursuant to a request by Freightliner Albuquerque and Freightliner Corp., Mr. Jackson submitted a Freightliner Application for Dealer Agreement, Application for Medium Duty Truck Dealer Agreement, and a Personal Data Sheet and Confidential Financial Statement. On February 4, 1993, Freightliner Corp. gave Freightliner Albuquerque written notice that it would not permit Freightliner Albuquerque to go through with its deal with Mr. Jackson.
 
 
 8
 On February 18, 1993, Mr. Jackson's attorney requested that Freightliner Corp. respond to Mr. Jackson's Application for Dealer Agreement and Application for Medium Duty Truck Dealer Agreement. On the same day, Freightliner Corp. Associate General Counsel notified Mr. Jackson that Freightliner Corp. would not approve his Asset Purchase Agreement with Freightliner Albuquerque. Freightliner Corp. gave no explanation for its decision. The following day, Mr. Jackson's attorney asked Freightliner Corp. to state the reasons for its decision. Because Freightliner Corp. did not respond, Mr. Jackson's attorney sent another similar letter on March 1, 1993. Freightliner Corp. again failed to respond, and Mr. Jackson's attorney sent a third letter to Freightliner Corp. on March 5, 1993. On the same day, Freightliner Corp. informed Mr. Jackson that "it is Freightliner's policy not to provide such an explanation to unsuccessful candidates."
 
 
 9
 Pursuant to the dealership agreements between Freightliner Albuquerque and Freightliner Corp., if Freightliner Corp. refused to authorize the transfer of Freightliner Albuquerque's dealership, Freightliner Corp. had a right of first refusal, allowing Freightliner Corp. to purchase the dealership on the same terms as were contained in the Asset Purchase Agreement between Freightliner Albuquerque and Mr. Jackson. On March 8, 1993, Freightliner Albuquerque sued Freightliner Corp. in the United States District Court for the District of New Mexico. The case was dismissed pursuant to a settlement agreement, under which Freightliner Corp. agreed to purchase the dealership under the same terms as Mr. Jackson would have had had Freightliner Corp. approved the Asset Purchase Agreement.
 
 
 10
 Mr. Jackson subsequently filed the diversity action against Freightliner Corp. which is the subject of this order and judgment. He alleged (1) Freightliner Corp. violated the New Mexico Motor Vehicle Dealers Franchising Act, NMSA §§ 57-16-1 through 16, by unreasonably withholding its consent to the sale of the dealership and placing unreasonable conditions on such sales; (2) Freightliner Corp.'s failure to approve the sale amounted to tortious interference with prospective contractual relations; (3) Freightliner Corp.'s failure to approve the sale amounted to a prima facie tort.
 
 
 11
 The district court subsequently granted Freightliner Corp.'s motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). The district court explained its ruling as follows:
 
 
 12
 The New Mexico Motor Vehicle Dealer Franchising Act states in part at Section 57-16-9, that "It shall be unlawful for a manufacturer, distributor or representative without due cause to restrict the transfer of a franchise unless the dealer shall receive fair and reasonable compensation."
 
 
 13
 In this case [Freightliner Albuquerque] received fair and reasonable compensation for the dealership, therefore [Freightliner Corp.'s] refusal to give consent to the sale to [Mr. Jackson], even if unreasonably refused is not actionable under the Motor Vehicle Dealer Franchising Act.
 
 
 14
 New Mexico also recognizes both the tort of ... interference with contract and prospective contractual interference.
 
 
 15
 However, the interference must be without justification or privilege to be tortious under New Mexico law.
 
 
 16
 In this case, [Freightliner Corp.'s] interference with the purported transfer of the dealership from [Freightliner Albuquerque] to [Mr. Jackson] was privileged by [Freightliner Corp.] exercising its valid contractual rights to refuse consent.
 
 
 17
 Therefore, [Freightliner Corp.'s] interference with the contract between [Mr. Jackson] and [Freightliner Albuquerque] was not tortious as a matter of law. Whether [Freightliner Corp.'s] refusal to consent to the sale to [Mr. Jackson] was reasonable or not is irrelevant.
 
 
 18
 [Freightliner Corp.] owed no duty of good faith and commercial reasonableness to [Mr. Jackson].
 
 
 19
 Finally the Court rejects [Mr. Jackson's] cause of action under the theory of prima facie tort. [Mr. Jackson] did not suffer injury to a legally protected interest.
 
 
 20
 Further, the Court finds that to permit a cause of action in prima facie tort would permit [Mr. Jackson] to circumvent the more stringent requirements under tortious interference with contract under New Mexico law.
 
 
 21
 That tort requires a plaintiff to prove that a defendant's acts were not privileged and that the defendant acted solely with the intent to harm plaintiff.
 
 
 22
 Prima facie tort does not require a plaintiff to prove that a defendant acted solely to inflict harm. Further, to permit a prima facie tort cause of action would also extend the contractual duty to give material reasons to a non-contracting third party.
 
 
 23
 This would be inconsistent with the rationale as pronounced in Newbill. Therefore, for the above stated reasons, the Court will grant the defendant's motion to dismiss [Mr. Jackson's] complaint, and a judgment will be entered as of this date.
 
 
 24
 This appeal followed.
 
 II
 
 25
 Mr. Jackson first contends the district court erred in dismissing his claim under the New Mexico Motor Vehicle Dealers Franchising Act, NMSA §§ 57-16-1 through 16. We need not tarry long on this contention. The New Mexico Supreme Court has recently held that a prospective purchaser of an automobile dealership who is not an existing dealer or franchisee for the manufacturer lacks standing under the New Mexico Motor Vehicle Dealers Franchising Act to sue the manufacturer for the loss of a prospective franchise. Key v. Chrysler Motors Corp., 918 P.2d 350, 358-59 (N.M.1996). Accordingly, Mr. Jackson's claim under that statute must fail.
 
 III
 
 26
 Next, Mr. Jackson contends the district court erred in dismissing his claim for tortious interference with prospective contractual relations. In Key, the New Mexico Supreme Court held plaintiffs like Mr. Jackson
 
 
 27
 may seek relief under common-law remedies such as tortious interference with prospective or existing economic relationships. In the tort of intentional interference with a prospective advantage, the basis for the imposition of liability requires proof of improper motive (intent to harm) or utilization of some improper means. Thus, even in the absence of a right of action under the Act, a prospective purchaser may recover if he or she can prove the existence of a malicious motive.
 
 
 28
 Key, 918 P.2d at 358-59 (citations omitted). Accordingly, Mr. Jackson's claim stands or falls on whether the facts alleged in the complaint would support the conclusion Freightliner Corp. had an improper motive for refusing to allow him to purchase a dealership and/or that it used improper means.
 
 A. Improper Means
 
 29
 Freightliner Corp. did not use "improper means" when it refused to consent to the transfer of the dealership. Under the dealer sales and service agreements between Freightliner Albuquerque and Freightliner Corp., Freightliner Albuquerque agreed "neither [Freightliner Albuquerque] nor the owners [thereof] shall permit any change of ownership ... of [Freightliner Albuquerque] ... without prior written approval of [Freightliner Corp.], which approval shall not be unreasonably withheld." Accordingly, Freightliner Corp. had a contractual right to refuse to consent to the sale of the dealership, provided it communicated its refusal to Freightliner Albuquerque in writing, which Mr. Jackson concedes it did on February 4, 1993. We reject the contention Freightliner Corp. was required to provide Mr. Jackson with an explanation of its reasons for refusing to consent to the transfer.
 
 
 30
 Mr. Jackson draws our attention to the right of first refusal addendum to the dealer agreement between Freightliner Corp. and Freightliner Albuquerque, which provides in pertinent part:
 
 A. Rights Granted
 
 31
 In the event that [Freightliner Corp.] refuses to approve a transfer or sale of any ownership interest in the dealership pursuant to the Freightliner Dealer Sales and Service Agreement ("Agreement"), [Freightliner Corp.] shall have the right of first refusal or an option to purchase the dealership assets, including any leasehold interest or realty, as provided herein.
 
 
 32
 B. Exercise of [Freightliner Corp.'s] Rights
 
 
 33
 If [Freightliner Corp.] exercises its right of first refusal or option to purchase the dealership, it must advise [Freightliner Albuquerque] in writing of its decision within thirty (30) days of its refusal to approve any sale or transfer....
 
 C. [Freightliner Corp.'s] Rights
 
 34
 If [Freightliner Corp.] has refused to approve the transfer or sale of [Freightliner Albuquerque's] ownership or assets and [Freightliner Albuquerque] has entered into a bona fide arms length written agreement governing such transfer or sale, [Freightliner Corp.'s] right under this paragraph shall be a right of first refusal, permitting [Freightliner Corp.] to assume the buyer's rights and obligations under such written agreement. The purchase price and other terms of sale shall be those set forth in such agreement and any related documents....
 
 
 35
 If [Freightliner Corp.] has refused to approve the transfer or sale of [Freightliner Albuquerque's] ownership or assets and [Freightliner Albuquerque] has not entered into a bona fide arms length written agreement governing such transfer or sale, then [Freightliner Corp.] shall have the option to purchase the principal assets of [Freightliner Albuquerque] utilized in the dealership operations ... and to terminate the Agreement. The purchase price shall be the fair market value as negotiated by the parties....
 
 
 36
 According to Mr. Jackson, Freightliner Corp. failed to exercise its right of first refusal within the thirty days allowed under the above quoted agreement. Mr. Jackson's contention is irrelevant. Whether Freightliner Corp. breached the contractual duties it owed Freightliner Albuquerque as a result of its decision not to consent to the transfer of the dealership to Mr. Jackson is between Freightliner Corp. and Freightliner Albuquerque. We are not persuaded by Mr. Jackson's contention that Freightliner Corp. waived its right to block the transfer of the dealership to Mr. Jackson by failing to exercise its right of first refusal in a timely fashion.
 
 B. Improper Motive
 
 37
 In Quintana v. First Interstate Bank, 737 P.2d 896, 898-99 (N.M.Ct.App.), cert. denied, 737 P.2d 893 (N.M.1987), the court held that a party has an absolute right to refuse to do business with another party, and that the refusal to do business with a party will not give rise to a claim for tortious interference with prospective contractual relations "regardless of the motive for [the ] decision." In his reply brief, Mr. Jackson attempts to distinguish Quintana on the ground that the dealer sales and service agreements between Freightliner Albuquerque and Freightliner Corp. stated Freightliner Corp.'s "approval shall not be unreasonably withheld," whereas there was no such contractual requirement in Quintana. Ostensibly, Mr. Jackson would have us hold that if consent was unreasonably withheld in violation of the agreement between Freightliner Corp. and Freightliner Albuquerque, Freightliner Corp.'s motives with respect to Mr. Jackson should be considered improper and therefore tortious. We reject this contention for two reasons. First, we believe Mr. Jackson's contention blurs the line between two different legal standards, "reasonableness" and "improper motive." Second, even if we assume Freightliner Corp. breached its agreement with Freightliner Albuquerque by unreasonably withholding its consent, that dispute is between Freightliner Corp. and Freightliner Albuquerque. Mr. Jackson was not a party to that agreement, and he cannot rely on the terms of that agreement under the circumstances of this case.
 
 
 38
 Mr. Jackson also attempts to distinguish Quintana on the ground the New Mexico Motor Vehicle Dealers Franchising Act, NMSA §§ 57-16-1 through 16, imposes a duty upon Freightliner Corp. not to refuse consent unreasonably or without due cause. We also reject this contention. As explained above, Mr. Jackson does not have standing to assert violations of the Act, and we will not allow him to bootstrap an otherwise unavailable cause of action by raising it under the guise of a common law tort claim.
 
 IV
 
 39
 Finally, Mr. Jackson contends the district court erred when it dismissed his prima facie tort claim. To state a claim for prima facie tort, the pleading must show the defendant acted without justification. Schmitz v. Smentowski, 785 P.2d 726, 735 (N.M.1990). Standing alone, the mere fact the defendant would acquire an economic benefit from the complained of act does not amount to justification. Id. In this case, however, we conclude Freightliner Corp. was justified in withholding consent, not merely because its actions might produce some economic benefit, but because it had an absolute right to choose the individuals with whom it wished to have contractual relations, in this case, a manufacturer-dealer relationship, and it determined a relationship with Mr. Jackson was not desirable.
 
 V
 
 40
 For the reasons stated, the judgment of the district court is AFFIRMED. Mr. Jackson's motion for certification is DENIED.
 
 
 
 *
 This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3
 
 
 **
 The Honorable Richard Owen, Senior United States District Judge, Southern District of New York, sitting by designation