**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 31 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MIMACO LLC, a Colorado Limited
Liability Company,

        Plaintiff - Appellee/ Cross
        - Appellant,

        v.

MAISON FAURIE ANTIQUITIES, a
sole proprietorship operating in New
Mexico; ROBERT FAURIE,

        Defendants - Appellants/
        Cross - Appellees.

Nos. 99-2072, 99-2095,
99-2339, & 99-2357
(D. Ct. No. CIV-97-1468)
(D. N. Mex.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **ANDERSON**, and **EBEL**, Circuit Judges.

---

On February 4, 1999, a jury rendered a verdict in favor of plaintiff-appellee

Mimaco, LLC and against defendants-appellants Maison Faurie Antiquities

("Maison Faurie") and Robert Faurie. Defendants appeal several rulings made by

the district court during and after the trial, and plaintiff cross-appeals. We

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm. In addition, we grant plaintiff's request for attorney fees it incurred on appeal and remand this case for the district court to determine the amount of fees plaintiff should be awarded.

## I. Background

Faurie, the owner of Maison Faurie, purchased a large number of books from the estate of Catherine McChesney. He took a sample of the books to his shop to sell. In the fall of 1995, Matthew VanBuren purchased two of the McChesney books from Maison Faurie: a first edition book written by Jack Kerouac and a book from the personal library of Robert Louis Stevenson. At that time, Faurie told VanBuren that the books were from the McChesney estate. Faurie indicated that he had an assistant at the McChesney residence packing the rest of the books for storage and that he wanted to sell the books as a collection. VanBuren left Maison Faurie with the impression that the McChesneys were collectors of books from generation to generation and that there must be some rare books in the collection.

Over the next several months, VanBuren telephoned Faurie at least three times to inquire further about the McChesney books. Faurie stated that he had taken the books directly from the McChesney residence to storage and had not sold any of them. Eventually, VanBuren formed Mimaco with Michael Jansen, a

lawyer, in order to purchase and resell the books. Before they paid for the collection, VanBuren and Jansen inspected some of the books, which were packed in approximately 150 moving boxes. Both Faurie and Ward Glass, one of the individuals who packed the books at the McChesney residence, indicated that the boxes contained the entire McChesney book collection. VanBuren and Jansen looked through approximately twenty of the boxes and told Faurie that they had not found books of the quality and value they expected. They asked Faurie for more time to look through the rest of the boxes, but Faurie could not accommodate them.

Ultimately, VanBuren and Jansen, through Mimaco, agreed to pay Faurie $18,000 for all of the books and let Faurie keep a couple of French books from the collection. They went to Maison Faurie to complete the transaction and pick up the McChesney books that they knew were still in the shop. While they were there, they discovered several additional books in the bookcases that were from the McChesney estate. Faurie allowed VanBuren and Jansen to take the additional books and stated that they now had the entire McChesney collection.

VanBuren eventually went through all of the boxes and did not discover any of the rare books he expected to find. VanBuren then called Faurie and tape recorded their conversation. On the telephone, Faurie stated that he knew for a fact that the McChesneys were rare book collectors. He further stated that he had

sold VanBuren and Jansen the entire McChesney collection, except for the books they had permitted him to keep.

In November 1997, Mimaco filed an amended complaint against Faurie and Maison Faurie, asserting seven causes of action: (1) breach of express and/or implied contract and promissory estoppel, (2) breach of implied covenant of good faith and fair dealing, (3) fraud, (4) violation of New Mexico's Unfair Practices Act (UPA), (5) interference with prospective and advantageous economic relations, (6) civil conspiracy, and (7) prima facie tort. Mimaco sought both compensatory and punitive damages. The trial court directed a verdict on all of plaintiff's claims except those for breach of contract and unfair trade practices.

The jury found that defendants breached an enforceable contract, violated their duty of good faith and fair dealing, and engaged in unfair trade practices. The jury awarded plaintiff approximately $20,000 in compensatory damages, and the district court entered a final judgment on February 11, 1999.

Defendants appealed the trial court's final order on March 12, 1999 (case number 99-2072), and plaintiff cross-appealed (case number 99-2095)[1]. Plaintiff then filed a motion in the trial court for an award of attorney fees and expenses

---

[1]In case number 99-2095, plaintiff cross-appeals the district court's grant of a directed verdict on its fraud claim. Plaintiff states that we need not reach its cross-appeal if we affirm the judgment in case number 99-2072. Because we do affirm the judgment in case number 99-2072, we do not further address cross-appeal number 99-2095.

- 4 -

pursuant to the UPA.  On August 3, 1999, the district court granted plaintiff's

motion, but awarded a smaller amount of fees and expenses than plaintiff had

requested.  Plaintiff filed a motion for clarification of the district court's August

3, 1999 order, but did not challenge the amount of fees and expenses awarded by

the court.  The district court granted plaintiff's motion on October 20, 1999.

Defendants then appealed the award of fees and expenses (case number 99-2339),

and plaintiff cross-appealed (case number 99-2357).

We consolidated all four of these cases on January 12, 2000 for the purpose

of oral argument only.  We now consolidate these cases in a single opinion

pursuant to Fed. R. App. P. 3(b).

## II.  Case No. 99-2072

### A.  Expert Testimony

Defendants first claim that the district court erred in admitting the

testimony of plaintiff's expert witnesses, Bill Good and Carl Bartecchi.  They

argue that the testimony is speculative and not scientific.

We review the district court's decision to admit expert testimony for an

abuse of discretion.  Smith v. Ingersoll-Rand Company, __ F.3d __, 2000 WL

728816, at *5 (10th Cir. June 7, 2000).  Under Daubert v. Merrell Dow

Pharmaceuticals, Inc., 509 U.S. 579 (1993) and Kumho Tire Co. v. Carmichael,

526 U.S. 137 (1999), the trial court must ensure that expert testimony is both

relevant and reliable. <u>Smith</u>, __ F.3d __, 2000 WL 728816, at *5. This "gatekeeping function is a flexible and commonsense undertaking in which the trial judge is granted broad latitude in deciding both how to determine reliability as well as in the ultimate decision of whether the testimony is reliable." <u>Id.</u> (internal quotation marks and citation omitted).

Good, a retired book dealer, testified that the McChesney collection should have included books by several well-known authors. He further opined that the collection should have contained an additional 400 to 600 books worth $200 to $300 each. Good based his estimate in part upon receipts, auction slips, references to certain books, and the books Faurie had in his shop. He also based his estimate on the type of books he would have expected to find in a collection like the McChesney collection.

Bartecchi, a physician who collects old medical books, testified that the McChesney collection lacked certain medical books he would have expected it to contain. He estimated that, at a minimum, 10% of the medical books in the collection should have pre-dated 1900 and that such books would be worth $300 to $500 each. He also estimated that there should have been approximately 50 additional cardiology books in the collection worth about $60 each.

We find no abuse of discretion in the trial court's decision to admit the testimony of Good and Bartecchi. The trial judge permitted plaintiff's experts to

testify about the types of books they would have expected to find in the McChesney collection and the approximate value of those books. However, the judge did not permit the experts to express any opinions about Faurie's alleged involvement in removing any books from the collection. In addition, defense counsel had an opportunity to cross-examine the experts and convince the jury during closing argument that their testimony was not credible.

It is true that neither Good nor Bartecchi personally knew the McChesneys or had first-hand knowledge of their lives, "but firsthand knowledge is not requisite to the admissibility of an expert opinion." Id. at *6. Moreover, "to the extent the lack of firsthand experience by either expert is relevant, it goes . . . to the weight and not the admissibility of the testimony." Id.

## B.  Tape Recording

Defendants next allege that the district court erred in admitting the tape-recording of VanBuren's telephone conversation with Faurie because plaintiff failed to timely disclose the recording as required under Fed. R. Civ. P. 26(a). This appears to be an argument that the district court should have sanctioned plaintiff pursuant to Fed. R. Civ. P. 37(c)(1) for its alleged Rule 26 violation by excluding the tape. We review the district court's decision to admit the tape for an abuse of discretion, affording it great deference. See Smith, __ F.3d __, 2000 WL 728816, at *9.

Plaintiff specifically stated in its initial Rule 26 disclosures, dated February 26, 1998, that it was identifying only non-privileged tangible materials. Thus, plaintiff asserts, it did not initially disclose the recording because the tape was privileged work product prepared in anticipation of litigation. During his April 1998 deposition, Faurie denied that he ever explicitly told VanBuren that Mimaco had purchased the whole McChesney collection. Because the recording contradicted Faurie's testimony, plaintiff's counsel decided to use it at trial. Consequently, on July 15, 1998, plaintiff's counsel produced the recording to defendants' counsel.

Under Rule 37(c)(1), a party that "without substantial justification" fails to disclose Rule 26(a) information "shall not, unless such failure is harmless, be permitted to use [the information] as evidence at a trial." "The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999) (internal quotation marks and citation omitted). The district court should use the following factors to guide its discretion: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." Id.

Assuming that plaintiff violated Rule 26(a), we conclude that the district court did not abuse its discretion in admitting the tape at trial. Plaintiff disclosed the tape to defendants six months before trial, and defendants therefore were not surprised by the admission of the tape at trial. Moreover, defendants have offered no evidence that they were prejudiced by the admission of the tape or that plaintiff acted in bad faith. Thus, plaintiff's argument is without merit.

## C. Motion for Directed Verdict

Defendants' last contention in case number 99-2072 is that the district court should have granted their motion for a directed verdict on plaintiff's claims for unfair trade practices and breach of implied covenant of good faith and fair dealing. They assert that there was insufficient evidence for a jury to decide these claims. We disagree.

We review de novo the district court's denial of a motion for a directed verdict. Knight v. Snap-On Tools Corp., 3 F.3d 1398, 1401 (10th Cir. 1993). "A directed verdict is appropriate only if the evidence, viewed in the light most favorable to the nonmoving party, points but one way and is susceptible to no reasonable inferences supporting the nonmoving party." Id. (internal quotation marks and citations omitted).

### 1. Unfair Trade Practices

The New Mexico Unfair Practices Act "prohibit[s] misleading or deceptive

communications to consumers." <u>Woodworker's Supply, Inc.</u>, 170 F.3d at 994. It "applies to all misleading or deceptive statements, whether intentionally or unintentionally made." <u>Id.</u> (internal quotation marks and citation omitted); <u>see</u> N.M. Stat. Ann. § 57-12-2(D) (Michie Supp. 1999) ("'[U]nfair or deceptive trade practice' means any false or misleading oral or written statement . . . knowingly made in connection with the sale . . . of goods or services . . . by any person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead any person . . . .").

Plaintiff presented evidence that defendant Faurie repeatedly assured VanBuren that he was buying the entire private McChesney book collection, except for the two books that VanBuren permitted Faurie to keep. Plaintiff also demonstrated that Faurie in fact knew that VanBuren and Jansen were not purchasing the whole collection. Faurie testified at trial that he filled and refilled bookcases in his shop with books from the McChesney estate before plaintiff made his purchase. Faurie further testified that many books from the McChesney estate had been taken to a dump. Thus, we hold that there was sufficient evidence for plaintiff's UPA claim to go to the jury.

2. Breach of Implied Covenant of Good Faith and Fair Dealing

"Whether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement." <u>Bourgeous v.</u>

Horizon Healthcare Corp., 872 P.2d 852, 856 (N.M. 1994) (internal quotation marks and citation omitted). An implied covenant of good faith and fair dealing "requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement. Denying a party its rights to those benefits will breach the duty of good faith implicit in the contract." Id. (citation omitted).

Plaintiff offered evidence that Faurie injured its right to receive the benefit of their contract. Specifically, plaintiff showed that Faurie knew VanBuren wanted to purchase the complete McChesney collection. Plaintiff also demonstrated that Faurie assured VanBuren repeatedly that Mimaco was purchasing the entire collection, minus the two books that Faurie kept. Plaintiff further showed that Faurie knew many books were removed from the collection and sold or destroyed before Mimaco bought the collection. Thus, we hold that there was sufficient proof for a jury to determine that Faurie breached the implied covenant of good faith and fair dealing.

III. Case No. 99-2339 and Cross-Appeal No. 99-2357

A. Case No. 99-2339

Defendants argue that the trial court erred in awarding plaintiff attorney fees pursuant to the UPA.

"We review the district court's award of attorneys' fees for an abuse of discretion. Underlying factual findings will only be upset when clearly erroneous.

- 11 -

However, a district court's statutory interpretation or legal analysis which provides the basis for the fee award is reviewable de novo." Knight, 3 F.3d at 1403. The UPA provides that a "court shall award attorneys' fees and costs to the party complaining of an unfair or deceptive trade practice . . . if he prevails." N.M. Stat. Ann. § 57-12-10(C) (Michie 1995).

Defendants contend that plaintiff should not be deemed a "prevailing party" because it recovered only $20,000, an amount well below the $75,000 jurisdictional requirement of 28 U.S.C. § 1332(a).[2] They base their argument on 28 U.S.C. § 1332(b), which provides that a district court may deny costs to a plaintiff if the plaintiff recovers less than $75,000. However, § 1332(b) applies to costs, not attorney fees. In addition, § 1332(b) permits, but does not require, a district court to deny costs when a plaintiff's recovery is less than the jurisdictional amount. Furthermore, we previously have awarded attorney fees and costs under the UPA when the amount of compensatory damages awarded by the jury was below the jurisdictional amount. See Knight, 143 F.3d at 1403 (finding that a plaintiff who recovered $23,116 on his UPA claim was a prevailing party under New Mexico law).

---

[2]Defendants also contend, in essence, that plaintiff is not entitled to attorney fees because the district court should have granted a directed verdict on plaintiff's UPA claim. Since we have already rejected defendants' directed verdict argument, we also reject this corollary claim.

In this case, plaintiff won a jury verdict on its UPA claim and therefore is entitled to attorney fees under N.M. Stat. Ann. § 57-12-10(C).  Accordingly, we affirm the district court's decision to award attorney fees and expenses.

B.  Case No. 99-2357

Plaintiff cross-appeals, claiming that it is now entitled to the attorney fees it has incurred on appeal.  "The New Mexico Supreme Court has ruled that [§ 57-12-10(C)] applies to costs and fees incurred on appeal as well as at trial." Woodworker's Supply, Inc., 170 F.3d at 996 (citing Hale v. Basin Motor Co., 795 P.2d 1006, 1013-14 (N.M. 1990)).  Plaintiff therefore is entitled to such fees.  On remand, the district court should award plaintiff attorney fees for litigating this appeal.

AFFIRMED and REMANDED.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge

- 13 -